FOWLER *v.* BOARD OF REGISTRATION IN CHIROPODY.

1. LICENSES—CHIROPODISTS—CONDITIONS FOR RELICENSURE—CONSTI-
TUTIONAL LAW.

Trial judge's holding that administrative rules promulgated by
the board of registration in chiropody were unconstitutional
*held,* proper, where it appears they required, as a condition
of relicensure, that chiropodists attend an educational program
which included a speaker holding membership in a named
professional association and otherwise effectively required li-
censees to attend programs sponsored by such association or
its affiliates (1961 AACS, §§ R 338.321–R 338.324).

2. SAME—REGULATION OF PROFESSIONS—PUBLIC INTEREST.

The legislature may provide for the licensure and regulation
of professions, such as the healing arts in which the public
interest is very great.

3. CONSTITUTIONAL LAW—DELEGATION OF POWERS—REGULATION OF
PROFESSIONS.

The function of regulating a profession may be delegated to a
State administrative agency, subject to a clearly apparent leg-
islative policy standard.

4. STATUTES—CONSTRUCTION OF AMENDATORY ACTS.

An amendatory act is construed in the context of the act which
it is designed to amend, the policy being to harmonize and give
effect to all legislative language whenever possible.

5. PHYSICIANS AND SURGEONS — CHIROPODISTS — EDUCATIONAL PRO-
GRAMS — CONSTRUCTION OF AMENDATORY ACT.

Amendatory act requiring attendance of chiropodists at 1-day
educational programs *held,* not an improper delegation of

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 41 Am Jur, Physicians and Surgeons § 29.
Regulation of chiropody.   33 ALR 841.
[2] 33 Am Jur, Licenses § 17.
41 Am Jur, Physicians and Surgeons § 15.
[3] 16 Am Jur 2d, Constitutional Law § 240.
33 Am Jur, Licenses § 59.
[4, 5] 50 Am Jur, Statutes §§ 275, 276.
[6] 14 Am Jur, Costs § 8.

legislative authority for lack of definition of *educational program,* where act amended sets forth the subjects upon which an applicant for initial license in chiropody must be examined, and conjunctive reading of the amended act would indicate a legislative intent that advances in chiropodial knowledge would be embraced in the continuing educational programs (CLS 1961, § 338.302, CL 1948, § 338.304, as amended by PA 1961, No 17).

6. COSTS—PUBLIC QUESTION—RELICENSURE OF CHIROPODISTS.
     No costs are allowed in action relative to relicensure of chiropodists, where a public question was involved in the construction of an amendatory act (CL 1948, § 338.304, as amended by PA 1961, No 17).

Appeal from Wayne; Piggins (Edward S.), J. Submitted October 8, 1964. (Calendar No. 19, Docket No. 50,190.) Decided January 4, 1965.

Bill by Owen W. Fowler, other individuals, and American Chiropody Association of Michigan, a Michigan nonprofit corporation, against the Board of Registration in Chiropody and its individual members, to declare invalid as unconstitutional a regulatory statute and certain promulgated regulations thereunder. Decree for plaintiffs. Defendant appeals. Order holding statute unconstitutional vacated.

*Leib & Leib* (*Samuel W. Leib* and *Marvin W. Reider,* of counsel), for plaintiffs.

*Frank J. Kelley,* Attorney General, *James R. Ramsey,* Acting Solicitor General, *Joseph B. Bilitzke* and *Franklin J. Rauner,* Assistant Attorneys General, for defendant.

SOURIS, J. PA 1915, No 115, as amended (CL 1948 and CLS 1961, § 338.301 *et seq.* [Stat Ann 1956 Rev and 1963 Cum Supp § 14.661 *et seq.*]),

regulates the practice of chiropody in this State. Section 4 of that act provides for annual relicensure of chiropodists. PA 1961, No 17 amended section 4 to provide that a chiropodist seeking relicensure "shall present evidence satisfactory to the board [of registration in chiropody] that in the year preceding the application he attended a 1-day educational program." CLS 1961, § 338.304 (Stat Ann 1963 Cum Supp § 14.665).

Individual plaintiffs, licensed Michigan chiropodists, and the American Chiropody Association of Michigan, a professional organization to which individual plaintiffs belong, filed a complaint asking that Act No 17 and the rules promulgated by defendant board in pursuance thereof be declared unconstitutional and that defendant board be enjoined permanently from suspending or revoking plaintiffs' licenses for failure to comply with the act or rules. After trial the chancellor entered a decree in accordance with these requests. Appeal is taken as of right only from that portion of the decree declaring Act No 17 unconstitutional.[1]

That the State through the legislature may provide for the licensure and regulation of professions, like the healing arts in which the public interest is very great, is not open to question. See *Locke* v. *Ionia Circuit Judge,* 184 Mich 535, 539; *Reetz* v. *Michigan* (1903), 188 US 505, 506 (23 S Ct 390, 47 L ed 563). Nor is it open to question that the legislature may delegate such regulatory functions to a State administrative agency, see *Salowitz* v. *State*

---

[1] The chancellor correctly found the challenged rules to be unconstitutional, inasmuch as they required that any approved educational program include a speaker who held membership in the American Podiatry Association, and in other ways effectively required plaintiffs to attend programs sponsored by that Association or its affiliates as a condition of relicensure. See 1961 AACS, §§ R 338.321–R 338.324. Individual plaintiffs organized plaintiff American Chiropody Association because of their dissatisfaction with the policies of the American Podiatry Association, to which defendant board members belonged.

*Board of Registration in Medicine,* 285 Mich 214, 220, subject, of course, to the general restrictions upon any delegation of legislative power that "the exact [legislative] policy is clearly made apparent", *G. F. Redmond & Co.* v. *Michigan Securities Commission,* 222 Mich 1, 5, by means of "legislatively prescribed policy standards", *McKibbin* v. *Corporation & Securities Commission,* 369 Mich 69, 90.

However, plaintiffs argue that Act No 17 must be stricken down as an improper delegation of legislative authority because it does not define "educational program", which phrase, plaintiffs maintain, is broad enough to encompass almost any conceivable subject of instruction. While this might be true if Act No 17 were considered in isolation, it is not true when Act No 17 is considered in the context of Act No 115, which it was designed to amend, and it is in such context that we generally construe amendatory acts. See *Conrad* v. *Nall,* 24 Mich 275, 278.

Section 2, subd (2) of Act No 115 (CLS 1961, § 338.302 [Stat Ann 1963 Cum Supp § 14.662]) sets forth the subjects upon which an applicant for an initial license in chiropody must be examined:

"Anatomy, histology, physiology, chemistry, bacteriology, pathology, diagnosis and treatment, surgery, hygiene, materia medica, therapeutics, dermatology, practical chiropody, shoe therapy, physio-electro-therapy, medical jurisprudence, neurology, mechanical orthopedics, and such additional subjects made necessary by advances in chiropodial education as the board may designate."

If we read section 4's amended language requiring attendance at a one-day educational program in conjunction with section 2, subd (2), the vagueness of the language disappears. Such a reading would be in accordance with our long-established policy of

harmonizing and giving effect to all legislative language whenever possible, *Malonny* v. *Mahar,* 1 Mich 26, 27, 28, and also, in our opinion, probably would coincide with the legislature's intent. For it is reasonable to assume that if the legislature intended that a knowledge of section 2, subd (2) subjects be necessary for licensure, it would also intend that an educational program prerequisite to relicensure would cover such of those subjects, including those validly additionally required by the board,[2] as would be indicated by advances in chiropodial knowledge.

That portion of the chancellor's order of November 19, 1962 declaring .PA 1961, No 17 unconstitutional is vacated. No costs, a public question being involved.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SMITH, O'HARA, and ADAMS, JJ., concurred.

[2] As seen *supra,* the board is empowered also to examine upon "such additional · subjects made necessary by advances in chiropodial education as the board may designate." Thus, in 1960 the board added to the list of examination subjects: "Operating room techniques and hospital protocol; X-ray diagnosis, treatment and radiation protection; aseptic techniques; drugs and prescriptions; chiropodial medicine; drug injection therapy; and prosthetics and contour molded shoes." 1960 AACS, § R 338.311. Vesting such authority in the board is not improper, since the subject matters specifically listed provide a legislatively fixed standard by which the chiropodial germaneness of board-selected subjects can be tested.