BOARDS OF COUNTY ROAD COMMISSIONERS v BOARD OF
STATE CANVASSERS

1. STATUTES—MOTOR VEHICLE HIGHWAY FUND—STATE INSTITUTION.
   The Motor Vehicle Highway Fund established by statute is not a
   state institution within the meaning of the constitutional provi-
   sion on the power of referendum (Const 1963, art 2, § 9; 1927
   PA 150, as amended and added by 1951 PA 54, 1972 PA 326).

2. STATUTES—AMENDMENT—CONSTRUCTION.
   An amendatory act is construed in the context of the act which it
   is designed to amend, the policy being to harmonize and give
   effect to all legislative language whenever possible.

3. STATUTES—TIE-BAR LANGUAGE—CONSTRUCTION—IN PARI MATERIA.
   Three acts that constituted a good-roads package passed on the
   same day by the Legislature, each referring to the other two by
   certain tie-bar language, are required to be construed by the
   courts as one act under the legal rule of *in pari materia* (1972
   PA 326, 327, and 328).

4. STATUTES—AMENDMENT—CONSTRUCTION—IN PARI MATERIA.
   The rule *in pari materia* does not permit the use of a previous
   statute to control by way of former policy the plain language of
   a subsequent statute, much less to add a condition or restric-
   tion thereto found in the earlier statute and left out of the
   later one.

5. STATUTES—CONSTRUCTION—IN PARI MATERIA.
   The rule that statutes *in pari materia* should be construed
   together applies with peculiar force to statutes passed at the
   same session of the Legislature, especially where they are
   passed or approved at almost the same time, or where one
   refers to the other, or is declared to be cumulative; it is to be
   presumed that such acts are imbued with the same spirit and

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur 2d, Constitutional Law § 137.
   42 Am Jur 2d, Initiative and Referendum §§ 2–6.
[2] 50 Am Jur, Statutes §§ 275, 276, 447.
[3–6] 50 Am Jur, Statutes §§ 225 *et seq.,* 348–351.

actuated by the same policy, and they are to be construed together as if part of the same act, or supplemental to each other.

6. STATUTES—TIE-BAR LANGUAGE—CONSTRUCTION—IN PARI MATERIA
   —REFERENDUM.

   Three acts of the Legislature passed on the same day, each referring to the other two by tie-bar language, are construed as one act under the legal rule of *in pari materia;* a Motor Vehicle Highway Fund established by one of those acts to be set up and maintained in the state treasury as a separate fund to be apportioned and appropriated for each fiscal year, certain percentages thereof to the Department of State Highways, to the several county road commissions of the state, and to the incorporated cities and villages of the state to be distributed and used for highway purposes, constitutes specific appropriations to state institutions, and to give meaning and effect to the intent of the Legislature, *i.e.,* to accomplish the purpose of the three acts, it is necessary to construe them as one act, making each exempt from referendum under the constitution (Const 1963, art 2, § 9; 1972 PA 326, 327, and 328).

Original action in the Court of Appeals. Submitted Division 2 August 16, 1973, at Lansing. (Docket No. 17487.) Decided October 2, 1973. Affirmed, 391 Mich 666.

Complaint by the Boards of County Road Commissioners of the Counties of Van Buren, Genesee, Kent, Macomb, Oakland, and Wayne, and The County Road Association of Michigan, and Earl F. Rogers, Engineer-Director of the County Road Association of Michigan, against the Board of State Canvassers, seeking a writ of mandamus permanently restraining the Board of State Canvassers from making an official declaration of sufficiency of petitions for a referendum of 1972 PA 326, and determining that the act is not subject to a referendum. Russell D. Gould intervened as a defendant. Writ granted; 1972 PA 326 is not subject to a referendum.

*Tom Downs* and *Keller, Cohn, Downs & Svenson*

(by *Timothy Downs) (John P. Cushman,* Attorney for Wayne County, *Hillman, Baxter & Hammond* [by *William S. Farr],* Attorneys for Kent County Road Commission, *L. W. McEntee,* Attorney for Oakland County Road Commission, *Robert F. Browning,* Attorney for Michigan Road Builders Association, Inc., *William Dietrich,* Attorney for City of Detroit DSR, *Daniel P. Dozier,* Attorney for Michigan UAW-CAP, *Patrick Hynes,* Attorney for City of Flint, *Michael Kell,* Attorney for Michigan Trucking Association, *Dickinson, Wright, McKean & Cudlip* [by *Thomas G. Kienbaum],* Attorneys for Southeastern Michigan Transportation Authority, and *Marston, Sachs, O'Connell, Nunn & Freid,* Attorneys for Michigan AFL-CIO, of counsel), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Solomon H. Bienenfeld* and *Charles D. Hackney,* Assistants Attorney General, for defendant.

*Durant, Talbot, Grant & McQuarrie,* for intervening defendant.

Before: Holbrook, P. J., and R. B. Burns and T. M. Burns, JJ.

Holbrook, P. J. This is an original action brought by the plaintiffs who seek, *inter alia,* a writ of mandamus determining that 1972 PA 326; MCLA 207.102 *et seq.;* MSA 7.292 *et seq.,* is not subject to a referendum and permanently restraining defendant Board of State Canvassers from making an official declaration of sufficiency of petitions for referendum of that act. On March 29, 1973, certain plaintiffs in a related case, *Gould v*

*Board of State Canvassers,* Docket No. 17301,[1] filed with the Board of State Canvassers a petition requesting a referendum on that act. The instant complaint was filed with this Court on June 25, 1973, together with a motion for immediate hearing and a motion for stay of proceedings. On July 2, 1973, this Court granted the motion for immediate hearing and granted the motion to stay the action of the Board of Canvassers for 20 days pending the consideration of the complaint for mandamus. It was further ordered that the defendants file an answer to the complaint within 10 days. In another order upon motion of Russell D. Gould, plaintiff in action No. 17301, he was permitted to intervene as a party-defendant. Upon a motion of plaintiffs this Court ordered and heard oral argument in Lansing on July 16, 1973. On that date this Court ordered defendants to show cause why the relief sought by the plaintiffs should not be granted, and further stayed the proceedings of defendant board during the pendency of this action and until further order of this Court or order of the Supreme Court. This Court on July 17, 1973, on its own motion ordered that the time for filing briefs be shortened with plaintiffs' brief to be filed within 15 days, and defendants to file their briefs within 15 days after plaintiffs' brief had been served on them. The last brief was filed on August 16, 1973. These briefs are very thorough and comprehensive and have been helpful to

---

[1] This was an action filed May 29, 1972, in this Court for writ of mandamus to issue to compel the Board of State Canvassers to make an official declaration of sufficiency of the petitions for referendum of 1972 PA 326. After the filing of pleadings and briefs by the respective parties this Court on June 28, 1973, ordered the complaint for mandamus be dismissed for the reason that the Board of State Canvassers was at the time in the process of determining whether the petitions had been signed by the requisite number of qualified and registered electors as provided and permitted by Const 1963, art 2, § 9, and MCLA 168.471 *et seq;* MSA 6.1471 *et seq.*

the Court. The case is now properly before us for decision.

The issue before us is whether 1972 PA 326 is subject to a referendum under Const 1963, art 2, § 9.

Art 2, § 9 reads in part as follows:

"The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative, and the power to approve or reject laws enacted by the legislature, called the referendum. The power of initiative extends only to laws which the legislature may enact under this constitution. *The power of referendum does not extend to acts making appropriations for state institutions or to meet deficiencies in state funds* and must be invoked in the manner prescribed by law within 90 days following the final adjournment of the legislative session at which the law was enacted. To invoke the initiative or referendum, petitions signed by a number of registered electors, not less than eight percent for initiative and five percent for referendum of the total vote cast for all candidates for governor at the last preceding general election at which a governor was elected shall be required.

"No law as to which the power of referendum properly has been invoked shall be effective thereafter unless approved by a majority of the electors voting thereon at the next general election." (Emphasis supplied.)

1972 PA 326 amended the title and §§ 2, 18b, 52, and 64 of 1927 PA 150, as amended and added by 1953 PA 147 and 1967 PA 5 (Ex Sess).

The pertinent part of the title reads as follows:

"An act to prescribe a privilege tax for the use of the public highways by owners and drivers of motor vehicles by imposing a specific tax upon the sale or use within the state of Michigan, of motor fuel; to prescribe the manner and the time of paying such tax and the duties of officials and others respecting such payment and collection; * * * to provide for certain exemptions

and refunds and for the disposition of the proceeds of such tax; and to prescribe penalties for the violation of this act."

Section 2 as amended imposed a tax of 9 cents per gallon[2] on all gasoline sold or used in producing or generating power for propelling motor vehicles used upon public roads and highways in this state.

Section 18b[3] was amended to read as follows:

"All sums of money received and collected under the provisions of this act, except the license fees provided for herein and after the payment of the necessary expenses incurred in the enforcement of this act, shall be deposited in the state treasury to the credit of the motor vehicle highway fund."

Section 52 of Chapter 3 as amended imposed a tax of 9 cents[4] per gallon on all liquefied petroleum gas used in this state.

Section 64 of the same chapter was amended to read as follows:

"All sums of money received and collected by the department under the provisions of this chapter, except the license fees herein provided and after the payment of the necessary expenses incurred in the enforcement of this act, shall be deposited in the state treasury to the credit of the motor vehicle highway fund."

---

[2] Previously the tax was 7 cents per gallon.

[3] Section 18b as added to 1927 PA 150 by 1951 PA 54 is as follows:

"All sums of money received and collected under the provisions of this act, except the license fees provided for herein, shall be deposited in the state treasury to the credit of the motor vehicle highway fund and, after the payment of the necessary expenses incurred in the enforcement of this act, are hereby appropriated, allocated and apportioned therefrom to the state highway department, the several county road commissions, and incorporated cities and villages of the state in the manner and for the specific highway purposes prescribed by law."

[4] Previously the tax was 7 cents per gallon.

A so-called tie-bar was added in § 3 of the act as follows:

"This act shall take effect on January 1, 1973 or on the first day of the month which is 20 days or more after it becomes law, whichever is later, but shall not take effect unless House Bill Nos. 5707 and 5783 of the 1972 session of the legislature are enacted into law."[5]

The act was ordered to take immediate effect, and was approved January 3, 1973.

It is the position of the plaintiffs that 1972 PA 326 is an appropriations act making appropriations to a state institution within the meaning of Const 1963, art 2, § 9.

Plaintiffs assert that since (1) § 18b provides that the proceeds from the tax "shall be deposited in the state treasury to the credit of the motor vehicle highway fund"; (2) the Motor Vehicle Highway Fund is a well recognized and very important fund in state affairs as determined in the case of *Lake Shore Coach Lines, Inc v Secretary of State,* 327 Mich 146; 41 NW2d 503 (1950); (3) the fund is restricted in its use exclusively to highway purposes by Const 1963, art 9, § 9; and (4) highway purposes were determined in the case of *Moreton v Secretary of State,* 240 Mich 584; 216 NW 450 (1927), to constitute state purposes, therefore 1972 PA 326 is an appropriations act.

In Black's Law Dictionary (4th ed), p 131, an appropriation in public law is defined as follows:

"The act by which the legislative department of government designates a particular fund, or sets apart a specified portion of the public revenue or of the money in the public treasury, to be applied to some general object of governmental expenditure, or to some individual purchase or expense."

---

[5] House Bill Nos. 5707 and 5783 became 1972 PA 327 and 328.

Applying Black's definition of the word appropriation to § 18b would in our opinion qualify it as an appropriations act.

The next premise of plaintiffs is that the Motor Vehicle Highway Fund as contained in § 18b is a state institution. This assertion is without any legal support. Nowhere do Michigan statutes or case law state that any *fund* which may be used to accomplish a state purpose is thereby a state institution. In the case of *Detroit Automobile Club v Secretary of State,* 230 Mich 623, 625–626; 203 NW 529, 530 (1925), the Supreme Court in defining a state institution said:

"Under these provisions of the Constitution, legislative acts may be given immediate effect if passed for the purpose of making appropriations for state institutions or to meet deficiencies in state funds, or such as are immediately necessary for the preservation of the public peace, health or safety. The plaintiffs say that the act in question is not such an act, and that therefore it is subject to a referendum and may not be given immediate effect.

"Considering these constitutional exceptions in the order stated, the first question to be determined is whether this is an act making appropriations for a state institution. It appropriates money for the use of the highway department in constructing and maintaining the highways of the state. Is the highway department a state institution within the meaning of the Constitution? The question is not solely whether the highway department may be correctly termed a state institution, but rather whether, in view of the functions which it exercises, it comes within the meaning of that term as used in the Constitution. It is not difficult to determine what the framers of the Constitution had in mind. It is clear that by permitting immediate effect to be given to appropriation acts for state institutions, it was their purpose to enable the state to exercise its various functions free from financial embarrassment. The highway department exercises state functions. It was cre-

ated by the Legislature for that purpose. It must have money to carry on its activities. Without the money appropriated by this act for its immediate use, it would cease to function. The constitutional purpose was to prevent such a contingency. And so we hold it a fair conclusion that the framers of the Constitution used the term state institutions in a broad sense intending to include *all organized departments of the state* to which the Legislature had delegated or should delegate the exercise of state functions.

"But it is not necessary to extend the language of the Constitution in order to include the highway department within its terms. The state highway department is a subsidiary institution of the state. In *State, ex rel Blakeslee, v Clausen,* 85 Wash 260, 274 (148 Pac 28, Ann Cas 1916B, 810), it was said:

" 'Upon any theory a public highway is a public institution. A road is not only a physical institution, built by the state in the exercise of a sovereign duty to promote the convenience and necessities of the citizens as well as the common welfare, but the department to which the Legislature had delegated the function is an institution as much as its creator, the Legislature.' " (Emphasis supplied.)

Further light on the subject is gleaned from *Moreton v Secretary of State,* 240 Mich 584, 591–592; 216 NW 450, 453 (1927), wherein it is stated:

"The question is whether the appropriations provided in the act are for state institutions or to meet deficiencies in state funds. It is clear that except as to subdivisions *c* and *c*-1, of section 19, the act makes appropriations for state institutions in the constitutional sense as held by this Court in *Detroit Automobile Club v Secretary of State,* 230 Mich 623 [203 NW 529] (1925). The only meritorious controversy revolves around subdivisions *c* and *c*-1. We will therefore confine our discussion on this feature of the case to those sections of the law which make appropriations to the several counties, cities, and villages of the state for highway purposes. While these local organizations are political subdivi-

sions of the state and exercise public functions, it cannot be said that they are state institutions. But the Legislature is a state institution and is the supreme authority in the building and maintenance of public roads. When it delegates the authority to build and maintain roads to any organized department of state government, it clothes that department with the power to exercise state functions, and the department becomes as much a state institution within the meaning of the Constitution as the Legislature itself. In *Detroit Automobile Club v Secretary of State, supra,* we said that:

" 'The framers of the Constitution used the term state institutions in a broad sense intending to include all organized departments of the state to which the Legislature had delegated or should delegate the exercise of state functions.'

"It is a part of the legislative highway policy, as shown by this and previous legislation, to enlist the aid of the counties in carrying on the elaborate program of road building to which it is committed. While so engaged in building roads for state purposes, under the direction and supervision of the state administrative board, with money supplied by the state at large, are the counties not exercising state functions? If they are, the money appropriated for that purpose is for state institutions within the meaning of the Constitution. It ought to be kept in mind that this is not a case where the counties are to build county roads as is ordinarily done with local appropriations. Here the state at large furnishes the money and selects the counties as the agencies through which it is to be expended for state purposes. So, to bring these appropriations within the constitutional exemption from referendum, it is not necessary to hold that the counties are state institutions. They are not, but, in respect to these appropriations, they are co-operating with the state in exercising state functions. They are not acting independently, but as agencies of the state in expending the state money for state purposes. The building and maintenance of good public roads have become important state functions in Michigan. These appropriations were made to enable it to function in that regard, and, being made for that purpose, they are not subject to referendum. To

hold otherwise would be to give the words 'state institutions' such a restricted meaning as to defeat the constitutional purpose, which is to save the state from financial embarrassment in exercising any of its state functions. And, in our view, it makes no difference whether it exercises them directly or through other organized agencies selected for that purpose. Nor does it matter whether the appropriation goes into the county treasury or is retained in the state highway fund by the state treasurer, so long as it is used for highway purposes under the direction and supervision of the state administrative board.

"For these reasons, we hold that the act is not subject to referendum."

The plaintiffs' claim on this subject might be correct if we apply literally the quote in the *Automobile Club* case, p 626; 203 NW p 530, taken from the case of the State of Washington that a "public highway is a public institution" and the further statements in the *Moreton* case to the effect that the counties receiving the funds thereof need not be state institutions, nor does it matter whether the appropriations go into the county treasury or are retained in the state highway fund by the state treasurer, so long as it is used for highway purposes, in order to preclude the subject act from being subject to referendum.

We are reluctant to extend the meaning of state institutions to the Motor Vehicle Highway Fund for two reasons: (1) it would be to our minds a precarious legal pronouncement fraught with probable danger when applied in future cases as legal precedent, and, (2) we deem it unnecessary to so hold in order to dispose of this case.

A more tenable position for plaintiffs to stand on in relation to this issue would be to assert that 1972 PA 326 is but a part by amendment of 1927 PA 150. Without question 1927 PA 150, as

amended by 1951 PA 54 and 1967 PA 5 (Ex Sess), is an appropriations act in which appropriations are made to state institutions in §§ 34[6] and 91[7]. It is, of course, an axiom of statutory construction that an amendatory act is construed in the context of the act which it is designed to amend, the policy being to harmonize and give effect to all legislative language whenever possible. *Doyle v Election Commission of City of Detroit,* 261 Mich 546; 246 NW 220 (1933); *Fowler v Board of Registration in Chiropody,* 374 Mich 254; 132 NW2d 82 (1965).

Although it appears that standing on this premise we could justifiably rule that the act is not subject to referendum, we do not predicate our decision on this added premise because we do not deem it necessary in view of our subsequent determination.

The plaintiffs further claim that 1972 PA 326 together with 1972 PA 327 and 1972 PA 328 constitute a good roads package passed on the same day, each referring to the other two by certain tie-bar language, and that therefore they are required to be construed by the courts as one act under the legal rule of *in pari materia.*

---

[6] "All sums of money received and collected by the secretary of state under the provisions of this chapter, except the license fees herein provided, shall be deposited in the state treasury to the credit of the motor vehicle highway fund, and after the payment of the necessary expenses incurred in the enforcement of this chapter shall be appropriated, allocated and apportioned therefrom to the state highway department, the several county road commissions and incorporated cities and villages of the state in the manner and for the specific highway purposes prescribed by law."

[7] "During January, 1969, and during each January thereafter, from the tax levied by this act, there is appropriated the sum of $3,500,000.00, which sum shall be used to pay the principal, interest and incidental costs for the outstanding bonds, heretofore issued by the Mackinac bridge authority or, in the event said bonds are refunded in accordance with Act No. 13 of the Public Acts of 1966, as amended, to pay the principal, interest and incidental costs for said refunding bonds. Upon retirement of all outstanding bonds and any refunding bonds hereafter issued, this appropriation shall cease."

The defendant board and intervening defendant in answer to this claim assert that the language in 1972 PA 326 is clear and unambiguous and not needful of interpretation. Further, they assert that the Legislature in omitting the specific appropriations language contained in the previous amending act 1951 PA 54 when adopting 1972 PA 326 intended by so doing that the act would not be construed as an act appropriating funds to a state institution. In *Voorhies v Judge of Recorder's Court,* 220 Mich 155, 157–158; 189 NW 1006, 1007 (1922), it is stated:

"The rule, *in pari materia,* does not permit the use of a previous statute to control by way of former policy the plain language of a subsequent statute; much less to add a condition or restriction thereto found in the earlier statute and left out of the later one. The contention made, if allowed, would go beyond the construction of the statute, and engraft upon its provisions a restriction which the Legislature might have added but left out."

Also see, *People, ex rel Pellow v Byrne,* 272 Mich 284; 261 NW 326 (1935). The rule contained in these cases is viable law. However, plaintiffs do not assert the rule *in pari materia* for the purpose of adding to 1972 PA 326 the specific language appropriating the proceeds from the tax "to the state highway department, the several county road commissions, and incorporated cities and villages of the state in the manner and for the specific highway purposes prescribed by law", as contained in the earlier act of 1951 PA 54; MCLA 207.118b; MSA 7.308(2) but for the purpose of construing 1972 Public Acts 326, 327 and 328 together as is required under the general rule of *in pari materia.*

Defendants cite and we recognize the case of *Kuhn v Department of Treasury,* 384 Mich 378;

183 NW2d 796 (1971), wherein it was ruled that the Michigan Income Tax Act of 1967 was subject to a referendum. We reiterate what the Supreme Court stated on pp 384–386; 183 NW2d pp 799–800:

"We note at the outset that in construing constitutional language we look not for the interpretation which lawyers and legislators, or others well-versed in the subtle shades of meaning of which the English language is capable, might apply. Rather, we adopt the meaning which the ordinary citizens who ratified the constitution would attach to the words under consideration.

" ' "A Constitution is made for the people and by the people. *The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it.* 'For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, *but rather that they have accepted them in the sense most obvious to the common understanding,* and ratified the instrument in the belief that that was the sense designed to be conveyed.' (Cooley's Constitutional Limitations [6th ed], 81.)" ' *Michigan Farm Bureau v Secretary of State,* 379 Mich 387, 391; 151 NW2d 797, 799 (1967).

"Furthermore, under a system of government based on grants of power from the people, constitutional provisions by which the people reserve to themselves a direct legislative voice ought to be liberally construed. *Michigan Farm Bureau v Secretary of State, supra;* 42 Am Jur 2d, Initiative and Referendum, § 5. Previous decisions of this Court requiring strict compliance with constitutionally mandated procedures for exercise of the powers of initiative and referendum should not be read as limiting the occasions upon which those powers may be exercised. See *Leininger v Secretary of State,* 316 Mich 644; 26 NW2d 348 (1947); *Scott v Secretary of*

*State,* 202 Mich 629; 168 NW 709 (1918); *Thompson v Secretary of State,* 192 Mich 512; 159 NW 65 (1916).

"Applying the above principles of construction to the constitutional provision under consideration, we think the conclusion that 'deficiencies in state funds' refers only to such deficiencies as exist at the time of passage of the act in question is inescapable. If the drafters of the Constitution wanted the people to more severely restrict the reserved power of referendum, they should have plainly so advised them by inserting 'present or future', or some such phrase, before 'deficiencies' in art 2, § 9. We may not stretch the language ratified by the people so as to allow revenue statutes to avoid the possibility of referendum by reference to *anticipated* deficiencies, resulting from future, simultaneous or even previous appropriations. Since defendants have not denied there was no deficiency in state funds when the act was passed, we hold that the Michigan Income Tax Act of 1967 was subject to referendum." (Emphasis in original.)

*Kuhn* is not determinative of the case at bar because the two issues presented in the instant case: (1) appropriation to a state institution precluding a referendum, and, (2) the rule of *in pari materia,* were not present therein. The general rule of *in pari materia* is stated in 82 CJS, Statutes, § 367, pp 832–833:

"The rule that statutes *in pari materia* should be construed together *applies with peculiar force to statutes passed at the same session of the Legislature, especially where they are passed or approved on the same day, or where statutes are passed or approved at about the same time, or where one refers to the other,* or is declared to be cumulative. It is to be presumed that such acts are imbued with the same spirit and actuated by the same policy, *and they are to be construed together as if parts of the same act,* or supplemental to each other." (Emphasis supplied.)

Michigan follows the general rule and did so in

*Michigan Good Roads Federation v State Board of Canvassers,* 333 Mich 352, 360–362; 53 NW2d 481, 484–485 (1952), which is binding upon us here. We quote in pertinent part:

"Acts 51 to 55, inclusive, PA 1951, to which plaintiffs thus point, constitute a comprehensive system for the collecting of specific taxes on motor vehicles and motor vehicle fuels, the allocation of funds therefrom and the use thereof for highway purposes. They were all enacted by the 1951 Legislature and became effective at the same time. Construed together, they provide for levying the specific taxes and the use thereof for highway purposes, the manner in which the said appropriations for highway purposes are allocated to said institutions, and the specific highway purposes for which they are to be used by said institutions. Act 51 allocates said funds, after payment of necessary expenses, as follows: 44% to the state highway department, 37% to the several county road commissions, and 19% to incorporated cities and villages which contain state trunk line highways; and declares that all of it shall be used only for highway purposes.

"Acts *in pari materia* must be considered and construed together. Act 54, levying the specific tax and appropriating it to these institutions 'for the specific highway purposes prescribed by law', necessarily points directly to those other acts for the apportioning of said moneys and for directing the manner of its use. If considered separately, without construing them together, they would be unworkable. Furthermore, if Act 51, instead of Act 54, appropriates these moneys, then Act 51 as well as Act 54 would fall; because Act 51 expressly provides (section 23) that it shall not take effect unless Act 54 also be enacted into law and become effective. Act 51 could not operate without Act 54, being without the funds appropriated by said Act 54.

"In *State Highway Commissioner v Detroit City Controller,* 331 Mich 337; 49 NW2d 318 (1951), the Court held that Act 51 is an act for the allocation and distribution of highway moneys collected under Act 54.

It further held that these acts were *in pari materia,* to be considered together (p 358; 49 NW2d p 329):

" 'It is the usual rule of statutory construction that apparently conflicting statutes should be construed, if possible, to give each full force and effect. As we said in *Rathbun v State of Michigan,* 284 Mich 521, 544; 280 NW 35, 44 (1938):

" ' " 'Statutes *in pari materia* are to be construed together, and repeals by implication are not favored. The courts will regard all statutes upon the same general subject matter as part of one system, and later statutes should be construed as supplementary or complementary to those preceding them.' *State v Omaha Elevator Co,* 75 Neb 637, 648 (106 NW 979 [983], 110 NW 874)." ' * * *

" 'Had the Legislature not again spoken on the subject, the foregoing discussion would have been sufficient, but in 1951 several acts were passed which materially affected the amounts of vehicular taxes and the method of distribution. We have reference to 1951 PA Nos. 51 through 55. Only 1951 PA 51, need concern us. It created the Motor Vehicle Highway Fund, the successor to the state highway fund. Rather than provide for piecemeal distribution of the moneys in the fund, as had been done previously, the act set up a comprehensive system of allocation to the commissioner and the various subordinate governmental units.'

"See, also, *Reed v Secretary of State,* 327 Mich 108 [113]; 41 NW2d 491 [493] (1950), where the Court said:

" 'Statutes *in pari materia* should be construed together, particularly when, as here, they were passed or reenacted in the same legislative session and approved by the governor on the same day.' "

The acts in question, 1972 PA 326 through 328 were passed on the same day, approved on the same day, and given immediate effect. They are tied together by reference to each other by tie-bar language as follows:

1972 PA 326, Section 3. "This act shall take effect on January 1, 1973 or on the first day of the month which

is 20 days or more after it becomes law, whichever is later, but shall not take effect unless House Bill Nos. 5707 [Act 327] and 5783 [Act 328] of the 1972 session of the legislature are enacted into law."

1972 PA 327, Section 2. "(1) This amendatory act shall take effect on January 1, 1973 but shall not take effect unless House Bills Nos. 5706 [Act 326] and 5783 [Act 328] of the 1972 Regular Session are enacted into law and unless Senate Joint Resolution LL of the 1972 Regular Session has been approved by the legislature and has been filed with the secretary of state at least 48 hours prior to January 1, 1973.

"(2) The apportionment, appropriation and allocation of revenues deposited in the motor vehicle highway fund prior to February 1, 1973 shall be made on the basis provided by law in effect on December 31, 1972. However, if House Bill No. 5706 of the 1972 Regular Session does not take effect until the first day of a month subsequent to January, 1973, then the apportionment of revenues deposited in the motor vehicle highway fund prior to the first day of the month next following the effective date of House Bill No. 5706 shall be made on the basis provided by law in effect on December 31, 1972."

1972 PA 328, Section 3. "This act shall take effect the first day of that month which is 20 days or more after it becomes law but shall not take effect unless House Bill No. 5706 [Act 326] of the 1971 session of the legislature is enacted into law."

We point out that the tie-bar provisions present in the instant case are more forceful because 1972 PA 326 through 328 *all* have tie-bar references to each other, whereas in the *Michigan Good Roads Federation* case 1951 PA 54 did not have a tie-bar provision connecting it with any of the other acts.

Everyone agrees that specific appropriations to state institutions are made in 1972 PA 327, and to give meaning and effect to the intent of the Legislature, *i.e.,* to accomplish the purpose of assuring

that the entire system or plan provided by the three subject acts become operative, it is necessary to construe them together as one act, making 1972 PA 326 exempt from referendum under Const 1963, art 2, § 9.

Although not pertinent to the question with which we are herein concerned, we should note that we are cognizant of a possible constitutional issue which is raised by the language of Joint Senate Resolution No. LL which reads as follows:

"Not more than one-eighteenth of the tax on motor fuels may be *diverted from highway purposes* for public transportation purposes as defined by law." (Emphasis supplied.)

It appears, at least superficially, from this language that there is a legislative understanding that the use of motor fuel tax revenues for public transportation purposes constitutes a diversion from highway purposes of any motor fuel tax revenues used in this manner. Obviously, if the use of revenues derived from motor fuel taxes constitutes a diversion from highway purposes, there exists a serious constitutional question as to whether those sections of 1972 PA 327 which provide for the use of a portion of revenues derived from gasoline taxes for public transportation purposes are violative of Const 1963, art 9, § 9. However, in the instant case, an original action in this Court, this constitutional question has been neither raised nor briefed by any of the parties. Further, resolution of this question is not necessary for determination of the issue presented in the action at bar as to whether 1972 PA 326 is subject to referendum under the provisions of Const 1963, art 2, § 9. We therefore refrain from consideration of this issue and leave it for determi-

nation in another action or by the Supreme Court, *sua sponte.*

1972 PA 326 is not subject to a referendum and the writ will issue. No costs, a public question being involved.

All concurred.