MICHIGAN UNITED CONSERVATION CLUBS v SECRETARY OF STATE
(ON REMAND)

Docket No. 233331. Submitted May 9, 2001, at Lansing. Decided May 16,
2001, at 9:00 A.M. Leave to appeal granted, 464 Mich 855.

Michigan United Conservation Clubs and others brought an original
action in the Court of Appeals against the Secretary of State and
the Board of State Canvassers, seeking a writ of mandamus that
would order the defendants to reject a petition for a referendum
regarding 2000 PA 381 filed by intervening-defendant People Who
Care About Kids. The act modifies the standards for the issuance of
concealed weapon permits and is effective on July 1, 2001, unless
the power of referendum is properly invoked. The plaintiffs alleged
that pursuant to Const 1963, art 2, § 9 the act is not subject to a
referendum because it appropriates funds to a state institution. The
Court of Appeals entered an order on April 9, 2001, dismissing the
complaint for mandamus on the ground that the matter was not
ripe for the Court's consideration. (Docket No. 233331). The
Supreme Court, in lieu of granting leave to appeal, vacated the
order of the Court of Appeals and remanded the matter to the
Court of Appeals for plenary consideration, noting that there is an
issue in this case ripe for consideration regarding whether the ref-
erendum sought is with respect to a law making appropriations for
state institutions or to meet deficiencies in state funds pursuant to
Const 1963, art 2, § 9. 463 Mich 1007 (2001).

On remand, the Court of Appeals *held*:

1. The plaintiffs concede that the act is not directed at meeting
existing deficiencies in state funds within the meaning of Const
1963, art 2, § 9.

2. The act is not an act making appropriations for state institu-
tions within the meaning of Const 1963, art 2, § 9. The request for a
writ of mandamus must be denied.

3. Although the Department of State Police is a state institution,
the appropriation in the act is directed at funding activities specifi-
cally associated with the issuance of concealed weapon permits,
not at sustaining the existence of the Department of State Police or
to enable the department to exercise its various functions free
from financial embarrassment. The department would not cease to
function without the appropriation. The appropriation therefore

does not constitute an appropriation for the department for purposes of Const 1963, art 2, § 9.

4. Even if the statutory expenditures did constitute appropriations for state institutions, the overarching right of the people to their direct legislative voice would require that 2000 PA 381 be subject to referendum. The appropriation in the act is peripheral to the core purposes of the act.

Writ of mandamus denied.

1. CONSTITUTIONAL LAW — REFERENDUMS — EXCEPTIONS — APPROPRIATIONS — CONCEALED WEAPON PERMITS.

The provisions of 2000 PA 381 that appropriate $1 million to the Department of State Police are directed at funding activities specifically associated with the issuance of concealed weapon permits; the appropriation is not directed at sustaining the existence of the department, is not intended to enable the department to exercise its various functions free from financial embarrassment, and is not an appropriation to a state institution for purposes of Const 1963, art 2, § 9, which provides that the "power of referendum does not extend to acts making appropriations for state institutions or to meet deficiencies in state funds."

2. CONSTITUTIONAL LAW — REFERENDUMS — EXCEPTIONS — APPROPRIATIONS.

The constitutional provision that the power of referendum does not extend to acts making appropriations for state institutions or to meet deficiencies in state funds is intended to enable the state institutions to exercise their various functions free from financial embarrassment; the provision pertains to appropriations aimed at sustaining the core functions of the state institutions, without which the institutions would cease to function or would suffer financial embarrassment (Const 1963, art 2, § 9).

*Dickinson Wright PLLC* (by *Peter H. Ellsworth, Jeffery V. Stuckey,* and *Scott R. Knapp*), for the plaintiffs.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Gary P. Gordon* and *Katherine C. Galvin,* Assistant Attorneys General, for the defendants

*Timothy A. Baughman,* for the intervening defendant.

Amicus Curiae:

*Mika, Meyers, Beckett & Jones, PLC* (by *Michael A. Zagaroli* and *Elizabeth K. Bransdorfer*, for Michigan Association of Chiefs of Police.

ON REMAND

Before: McDONALD, P.J., and O'CONNELL and METER, JJ.

O'CONNELL, J. Plaintiffs seek a writ of mandamus that orders defendants to reject a petition for referendum filed by intervenor-defendant.[1] For the reasons stated in this opinion, we deny the request for mandamus.

At issue is 2000 PA 381, a comprehensive piece of legislation that modified the standards for the issuance of concealed weapon permits in Michigan. See MCL 28.421 *et seq.* The legislation takes effect on July 1, 2001. However, if the power of referendum is properly invoked, the legislation will not take effect unless it is approved by voters at the next general election in November 2002. Const 1963, art 2, § 9; MCL 168.477(2).

Plaintiffs filed the instant complaint seeking a writ of mandamus from this Court on March 23, 2001, after the Secretary of State accepted for filing a petition by intervenor-defendant calling for a referendum on 2000 PA 381. The issuance of a writ of mandamus is proper where

---

[1] Pursuant to our Supreme Court's order of remand, we are called on to give plenary consideration to the issue "whether the referendum sought is with respect to a law 'making appropriations for state institutions or to meet deficiencies in state funds.'" *Michigan United Conservation Clubs v Secretary of State*, 463 Mich 1007 (2001), quoting Const 1963, art 2, § 9.

(1) the party seeking the writ has a clear legal right to performance of the specific duty sought, (2) the defendant has the clear legal duty to perform the act requested, (3) the act is ministerial and involves no exercise of discretion or judgment, and (4) no other remedy exists, legal or equitable, that might achieve the same result. [*Baraga Co v State Tax Comm*, 243 Mich App 452, 454-455; 622 NW2d 109 (2000).]

The crux of plaintiffs' argument in this mandamus action is that 2000 PA 381 is not subject to referendum because it appropriates funds to a state institution. Plaintiffs' assertion implicates Const 1963, art 2, § 9, which provides in pertinent part:

The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative, and the power to approve or reject laws enacted by the legislature, called the referendum. . . . *The power of referendum does not extend to acts making appropriations for state institutions or to meet deficiencies in state funds* and must be invoked in the manner prescribed by law within 90 days following the final adjournment of the legislative session at which the law was enacted. [Emphasis supplied.]

Plaintiffs also direct our attention to MCL 28.425b(5) and MCL 28.425w, arguing that these provisions appropriate funds for state institutions within the meaning of Const 1963, art 2, § 9. MCL 28.425b(5) provides:

Each applicant shall pay a fee of $55.00 . . . plus an additional assessment of $5.00 for deposit in the concealed weapon enforcement fund under [MCL 28.425v] at the time of filing an application under this section. . . . The county treasurer shall deposit $10.00 of each fee collected under this section in the general fund of the county to the credit of the county clerk and forward the balance to the state treasurer. The state treasurer shall deposit the balance of the fee in the general fund to the credit of the department of state police. The state treasurer shall deposit the assess-

ment in the concealed weapon enforcement fund created in [MCL 28.425v]. Each county shall report to the senate and house fiscal agencies by October 1 of each year its costs per applicant to implement this section.

Moreover, MCL 28.425w(1) states:

One million dollars is appropriated from the general fund to the department of state police for the fiscal year ending September 30, 2001 for all of the following:

(a) Distributing trigger locks or other safety devices for firearms to the public free of charge.

(b) Providing concealed pistol application kits to county sheriffs, local police agencies, and county clerks for distribution under [MCL 28.425].

(c) The fingerprint analysis and comparison reports required under [MCL 28.425b(11)].

(d) Photographs required under [MCL 28.425c].

(e) Creating and maintaining the database required under [MCL 28.425e].

(f) Creating and maintaining a database of firearms that have been reported lost or stolen. Information in the database shall be made available to law enforcement through the law enforcement information network.

(g) Grants to county concealed weapon licensing boards for expenditure only to implement this act.

(h) Training under [MCL 28.425v(4)].

(i) Creating and distributing the reporting forms required under [MCL 28.425m].

(j) A public safety campaign regarding the requirements of this act.

In their appellate brief, plaintiffs concede that 2000 PA 381 is not an act directed at meeting existing deficiencies in state funds within the meaning of Const 1963, art 2, § 9. Therefore, we confine our analysis to whether 2000 PA 381 is an act appropriating funds to state institutions as contemplated by Const 1963, art 2, § 9. Further, our analysis does not consider the

merits of the policy supporting 2000 PA 381. It is not within the province of the judiciary to question the wisdom of the Legislature's policy decisions. See *American States Ins Co v Dep't of Treasury*, 220 Mich App 586, 597; 560 NW2d 644 (1996).

We begin our analysis against the backdrop of well-settled principles regarding the construction of constitutional provisions. Paramount to our analysis is the maxim that constitutional provisions are to be construed in accordance with " 'common understanding.' " *American Axle & Mfg, Inc v Hamtramck*, 461 Mich 352, 363; 604 NW2d 330 (2000) (citation omitted). As this Court recently observed in *Reynolds v Bureau of State Lottery*, 240 Mich App 84, 86-87; 610 NW2d 597 (2000):

> "When interpreting the constitution, the primary duty of the judiciary is to 'ascertain as best the Court may the general understanding and therefore the uppermost or dominant purpose of the people when they approved the provision or provisions.' " [*Id.*, quoting *Bingo Coalition for Charity—Not Politics v Bd of State Canvassers*, 215 Mich App 405, 409; 546 NW2d 637 (1996), in turn quoting *Michigan Farm Bureau v Secretary of State*, 379 Mich 387, 390-391; 151 NW2d 797 (1967).]

In addition to the general principles of constitutional construction, we are mindful that "under a system of government based on grants of power from the people, constitutional provisions by which the people reserve to themselves a direct legislative voice ought to be liberally construed." *Kuhn v Dep't of Treasury*, 384 Mich 378, 385; 183 NW2d 796 (1971); see also *Bingo, supra* at 410. However, though we are cognizant that this Court is required to enforce strict compliance with constitutionally mandated procedures that relate to the exercise of the referendum

power, we are not permitted to " 'stretch' " the language of the constitution to limit the legitimate exercise of that power. *Id.*, quoting *Kuhn, supra* at 386.

With the foregoing principles in mind, we conclude that 2000 PA 381 is not an "act[ ] making appropriations for state institutions" within the meaning of Const 1963, art 2, § 9 and therefore deny plaintiffs' request for a writ of mandamus. We reach this conclusion in light of the principles set forth by our Supreme Court in *Detroit Automobile Club v Secretary of State*, 230 Mich 623; 203 NW 529 (1925), and its progeny. Construing Const 1908, art 5, § 1, the predecessor of Const 1963, art 2, § 9, our Supreme Court articulated governing principles that are of guidance in the instant case. Specifically, the Court framed the relevant inquiry with regard to whether an entity is a state institution in the following terms:

> The question is not solely whether the highway department may be correctly termed a State institution, but rather whether, in view of the functions which it exercises, it comes within the meaning of that term as used in the Constitution. [*Detroit Automobile Club, supra* at 625.]

The Court went on to observe that the framers of our state constitution, by enacting a provision that limited the exercise of the referendum power to certain pieces of legislation, sought "to enable the State to exercise its various functions free from financial embarrassment." *Id.*

In *Detroit Automobile Club, supra,* the legislation at issue imposed a tax of two-cents a gallon on all gasoline sold and used within Michigan. *Id.* at 624. The legislation clearly provided that the proceeds of this tax were to (1) " 'meet deficiencies in appropriations' " for money owed to the counties, (2) aid in the

payment of interest on state highway bonds, and (3) facilitate the " 'betterment of the public highways within the State.' " *Id.*

Concluding that the highway department "exercise[d] State functions," and that it "must have money to carry on its activities," the Court declined to allow a referendum on the legislation. *Id.* at 626. Rather, the Court opined:

> *Without the money appropriated by this act for its immediate use, [the highway department] would cease to function. The constitutional purpose was to prevent such a contingency.* And so we hold it a fair conclusion that the framers of the Constitution used the term State institutions in a broad sense intending to include all organized departments of the State to which the legislature had delegated or should delegate the exercise of State functions. [*Id.* (emphasis supplied).]

As an initial matter, we share plaintiffs' view that a broad interpretation of the term "state institution" requires us to conclude that the Department of State Police falls within this definition. We do not doubt that by enforcing the laws and protecting the citizens of this state, the Department of State Police exercises an invaluable state function. However, we are not persuaded that MCL 28.425w and MCL 28.425b(5) provide *"appropriations for"* a state institution as contemplated by Const 1963, art 2, § 9. (Emphasis supplied.)

A close examination of our Supreme Court's decision in *Detroit Automobile Club, supra,* supports our conclusion. In that case, the Court concluded that "by permitting immediate effect to be given to appropriation acts for State institutions," the framers of the constitution sought to "enable the State to exercise

its various functions free from financial embarrassment." *Detroit Automobile Club, supra* at 625. Our Supreme Court further observed that immediate effectiveness of the legislation, unhindered by referendum, was warranted because without the funds appropriated by the legislation, "[the state institution] would cease to function." *Id.* at 626.[2]

In our opinion, the instant legislation does not fit within the confines of Const 1963, art 2, § 9 because it is not necessary to the continued existence of the Department of State Police. Indeed, our plain reading[3] of MCL 28.425w leads us to conclude that the appropriation of $1 million is directed at funding activities specifically associated with the issuance of concealed weapon permits, rather than sustaining the existence of the Department of State Police. The language employed in MCL 28.425w(1) demonstrates that the $1 million appropriation is reserved for specific, enumerated uses associated with the issuance of concealed weapon permits. For example, a review of MCL 28.425w reveals that the $1 million is directed at funding, among other things, (1) the distribution of

---

[2] Although our Supreme Court's interpretation of the referendum power in *Detroit Automobile Club, supra,* involved Const 1908, art 5, § 1, we believe it is instructive in construing Const 1963, art 2, § 9, which contains virtually identical language.

The delegates to the 1961 Constitutional Convention are presumed to have known and to have understood the meaning ascribed in these earlier decisions to the language of the 1908 Constitution. This language was retained by them in the 1963 Constitution without modification in response to the earlier decisions. Under well-established principles, it is not open to us to place a new construction on this language. [*Bds of Co Rd Comm'rs v Bd of State Canvassers,* 391 Mich 666, 676; 218 NW2d 144 (1974).]

[3] Well-settled rules of statutory construction require that we examine the plain language of a statutory provision to ascertain the Legislature's intent. See *Sington v Chrysler Corp,* 245 Mich App 535; 630 NW2d 337 (2001).

trigger locks and concealed pistol application kits, (2) the fingerprinting and photographing of applicants, (3) maintaining a database that compiles statistics relevant to the issuance of concealed weapon permits, and (4) maintaining a public safety campaign regarding the modified standards set forth in 2000 PA 381.

After a review of these enumerated uses, we conclude that the $1 million appropriation is not intended to "enable the [Department of State Police] to exercise its various functions free from financial embarrassment." *Detroit Automobile Club, supra* at 625. We are not of the view that, without the $1 million appropriation, the Department of State Police "would cease to function." *Id.* at 626.

Likewise, we reject plaintiffs' contention that MCL 28.425b(5), which provides for the payment of fees by applicants for concealed weapon permits, constitutes an appropriation for the Department of State Police. MCL 28.425b(5) provides that of a total fee of $60 to be paid by each applicant, $5 is to be "deposit[ed] in the concealed weapon enforcement fund . . . ."[4] Similarly, MCL 28.425v(4) provides:

> The department of state police shall expend money from the fund *only to provide training to law enforcement personnel regarding the rights and responsibilities of individuals who are licensed to carry concealed pistols in this state and proper enforcement techniques in light of those rights and responsibilities.* [Emphasis supplied.]

---

[4] Although not determinative to our decision in the instant case, we note that in *Bds of Co Rd Comm'rs v Bd of State Canvassers*, 50 Mich App 89, 96, 99; 213 NW2d 298 (1973), aff'd 391 Mich 666; 218 NW2d 144 (1974), this Court expressed serious misgivings regarding whether a "fund" is a state institution as contemplated by our constitution. However, the Court of Appeals did not definitively decide the issue. *Id.* at 99.

A plain reading of the legislation thus demonstrates that rather than sustaining the core functions of the Department of State Police, the licensing fees collected are aimed at funding activities made necessary by the enactment of the legislation. Further, a plain reading of the legislation does not lead us to conclude that the $45 of each fee to be deposited into the general fund "to the credit of the department of state police" is necessary to the continued function of that department. Absent any indication that the $1 million appropriation in MCL 28.425w or the fees paid by virtue of MCL 28.425b(5) are aimed at sustaining core functions of the Department of State Police, we conclude that 2000 PA 381 is not an act making appropriations to a state institution and is therefore subject to referendum.[5] Subjecting 2000 PA 381 to referendum will not financially embarrass the Department of State Police, nor will it cause the Department of State Police to cease to function.

Alternatively, even if we were to conclude that the statutory expenditures constituted appropriations for state institutions as contemplated by Const 1963, art 2, § 9, we would nevertheless hold that the overarching right of the people to their "direct legislative voice," *Kuhn, supra* at 385, requires that 2000 PA 381 be subject to referendum. A thorough review of the legislation demonstrates that it is directed at modify-

---

[5] Our conclusion is consonant with decisions of our Supreme Court after *Detroit Automobile Club, supra,* construing the referendum power in the constitution. In all these cases, the appropriations at issue were directly related to the core functioning of the state institution. See, e.g., *Moreton v Secretary of State,* 240 Mich 584, 592; 216 NW 450 (1927); *Michigan Good Rds Federation v State Bd of Canvassers,* 333 Mich 352, 360, 364; 53 NW2d 481 (1952); *Bds of Co Rd Comm'rs v Bd of State Canvassers,* 391 Mich 666, 670; 218 NW2d 144 (1974); *Co Rd Ass'n of Michigan v Bd of State Canvassers,* 407 Mich 101, 116-118; 282 NW2d 774 (1979).

ing the standards for issuance of concealed weapon permits in this state. The process by which an applicant applies for a permit is the sine qua non of the legislation. In contrast, the appropriation measure is peripheral to the core purpose of the legislation. When confronted with legislation that implicates the people's right to accept or reject legislation, we find the following passage from our Supreme Court's decision in *Michigan Farm Bureau, supra* at 393, to be of guidance.

> There is nevertheless an overriding rule of constitutional construction which requires that the commonly understood referral process, forming as it does a specific power the people themselves have expressly reserved, be saved if possible . . . . That rule is, in substance, that no court should construe a clause or section of a constitution as to impede or defeat its generally understood ends when another construction thereof, equally concordant with the words and sense of that clause or section, will guard and enforce those ends. [*Id.*, citing *Prigg v Commonwealth of Pennsylvania*, 41 US (16 Pet) 539, 612; 10 L Ed 1060 (1842).]

In our view, the construction of Const 1963, art 2, § 9 first articulated by our Supreme Court in *Detroit Automobile Club, supra,* best guards and enforces the people's right to a referendum. Because 2000 PA 381 is not an act making appropriations to state institutions as contemplated by Const 1963, art 2, § 9, it is subject to referendum. Plaintiffs' request for a writ of mandamus is denied.