KUHN v. DEPARTMENT OF TREASURY

1. STATUTES—TAXATION—INCOME TAX ACT OF 1967—DEFICIENCIES
   IN STATE FUNDS—COURTS
   
   The Michigan Supreme Court will not concern itself with the
   legislators' motives for inserting language regarding meeting
   deficiencies in state funds in the Income Tax Act of 1967, as
   courts are not concerned with the motives which actuate the
   members of the legislative body in enacting a law but only
   in the results of their actions (MCLA § 206.1 et seq.).

2. CONSTITUTIONAL LAW—CONSTRUCTION—COURTS.
   
   The Michigan Supreme Court, in construing constitutional lan-
   guage, looks not for the interpretation which lawyers and
   legislators, or others well-versed in the subtle shades of mean-
   ing of which the English language is capable, might apply;
   rather, it adopts the meaning which the ordinary citizens who
   ratified the constitution would attach to the words under
   consideration.

3. CONSTITUTIONAL LAW—CONSTRUCTION—INITIATIVE—REFERENDUM.
   
   Under a system of government based on grants of power from
   the people, constitutional provisions by which the people reserve
   to themselves a direct legislative voice ought to be liberally
   construed and previous decisions of the Michigan Supreme
   Court requiring strict compliance with constitutionally man-

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Constitutional Law §§ 150, 168, 169.
[2] 50 Am Jur, Statutes §§ 238, 239.
[3] 16 Am Jur 2d, Constitutional Law §§ 228, 248.
[4] 42 Am Jur 2d, Initiative and Referendum §§ 2, 5.
[5] 42 Am Jur 2d, Initiative and Referendum §§ 2-6, 9, 13.
[6] 42 Am Jur 2d, Initiative and Referendum §§ 9, 15.
[7] 42 Am Jur 2d, Initiative and Referendum §§ 3, 43.
[8] 42 Am Jur 2d, Initiative and Referendum §§ 3, 21, 27.
[9, 10] 16 Am Jur 2d, Constitutional Law §§ 58, 65, 71.
   50 Am Jur, Statutes § 194.
[11, 12] 51 Am Jur, Taxation § 72 et seq.

dated procedures for exercise of the powers of initiative and referendum should not be read as limiting the occasions upon which those powers may be exercised.

4. CONSTITUTIONAL LAW—REFERENDUM—DEFICIENCIES IN STATE FUNDS.

The words "deficiencies in state funds", in the constitutional provision for referendum, refer only to such deficiencies as exist at the time of passage of the act in question; since, if the drafters of the constitution wanted the people to more severely restrict the reserved power of referendum, they should have plainly so advised them by inserting "present or future" or some such phrase, before "deficiencies" (Const 1963, art 2, § 9).

5. CONSTITUTIONAL LAW—STATUTES—REVENUE STATUTES—REFERENDUM—ANTICIPATED DEFICIENCIES IN STATE FUNDS.

The Michigan Supreme Court may not stretch the language in the constitutional provision for referendum, ratified by the people, so as to allow revenue statutes to avoid the possibility of referendum by reference to *anticipated* deficiencies in state funds, resulting from future, simultaneous or even previous appropriations (Const 1963, art 2, § 9).

6. TAXATION—INCOME TAX ACT OF 1967—REFERENDUM—SUMMARY DISMISSAL—DECLARATORY JUDGMENT.

The Michigan Income Tax Act of 1967 was subject to referendum since it is not denied there was no deficiency in state funds when the act was passed; accordingly, defendants were not entitled to summary dismissal of plaintiffs' action, for a declaratory judgment that the act was unconstitutional prior to 90 days after adjournment of the 1967 legislative session (MCLA § 206.1 *et seq.*).

7. CONSTITUTIONAL LAW—REFERENDUM.

There is no provision in the constitution extending the time within which a referendum may be sought by reason of the pendency of litigation and it would be extraordinary for the courts to declare such an extension of time (Const 1963, art 2, § 9).

8. CONSTITUTIONAL LAW—TAXATION—INCOME TAX ACT OF 1967—REFERENDUM.

Failure of plaintiffs to comply with the constitutional requirements within 90 days from the adjournment of the legislature precludes any action at this time by the Michigan Supreme

Court, where plaintiffs sought a declaratory judgment that the Income Tax Act of 1967 was unconstitutional and on appeal requested that the Michigan Supreme Court provide an adequate time for securing the required number of signatures for a referendum petition (Const 1963, art 2, § 9; MCLA § 206.1 *et seq.*).

9. Constitutional Law—One-Object Provision—Construction.

The one-object provision of the Michigan constitution is to be construed reasonably and not in so narrow and technical a sense as unnecessarily to embarrass legislation (Const 1963, art 4, § 24).

10. Statutes — Constitutional Law — One-Object Limitation — Taxation — Income Tax Act of 1967.

A statute may authorize the doing of all things which are in furtherance of the general purpose of the act without violating the one-object limitation of the Constitution of 1963 and so, an appropriation in the Income Tax Act of 1967 to finance its administration and provisions for disposition of the taxes collected, are proper and constitutional as the appropriation was utterly germane to the object of the act which object was to provide for creation and collection of a state income tax (Const 1963, art 4, § 24; MCLA § 206.1 *et seq.*).

11. Constitutional Law—Taxation—Income Tax Act of 1967— Graduated Income Tax—Classification of Taxpayers.

Neither the designation of three types of taxpayers with different applicable rates to each, nor the difference in exemptions or exclusions cause the Income Tax Act of 1967 to violate the Michigan constitutional provision prohibiting an income tax graduated as to rate or base as the rates of tax imposed by the act are uniformly applicable to all taxable income of every taxpayer in each class (Const 1963, art 9, § 7; MCLA § 206.1 *et seq.*).

12. Constitutional Law—Taxation—Income Tax Act of 1967— Equal Protection.

The rates of tax imposed by the Income Tax Act of 1967 are not violative of the equal protection clauses of the Federal and State Constitutions (US Const, Am 14; Const 1963, art 1, § 2; MCLA § 206.1 *et seq.*).

Appeal from Court of Appeals, Division 2, T. G. Kavanagh, P. J., and Levin and Newblatt, JJ., affirming Oakland, William R. Beasley, J. Sub-

mitted March 10, 1970. (No. 22 January Term 1970, Docket No. 52,328.) Decided March 2, 1971.

15 Mich App 364 affirmed as modified.

Complaint by Richard D. Kuhn and Bruce E. Duke Contracting Company against Department of Treasury, Allison Green, State Treasurer, and Clarence W. Lock, Commissioner, Department of Revenue, Division of the Department of Treasury, for declaratory judgment that the state income tax act is unconstitutional and seeking injunctive relief against its enforcement. Defendants' motion for summary judgment granted. Plaintiffs appealed to the Court of Appeals. Affirmed. Plaintiffs appeal. Affirmed as modified.

*Kuhn & Scupholm,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *William D. Dexter,* Assistant Attorney General, for defendants.

T. M. KAVANAGH, C. J. On July 20, 1967, the Michigan Income Tax Act of 1967,[1] (hereinafter referred to as "the Act") was approved by the Governor. The Act was scheduled to take effect on October 1, 1967.[2] Plaintiffs (appellants), a Michigan citizen taxpayer and a Michigan corporate taxpayer, filed a complaint in Oakland circuit court on September 13, 1967, requesting a declaratory judg-

[1] PA 1967, No 281 (MCLA § 206.1 *et seq.;* Stat Ann 1970 Cum Supp § 7.557[101] *et seq.*).
[2] But see MCLA § 206.499 (Stat Ann 1970 Cum Supp § 7.557 [1499]) : The sections imposing an income tax on corporations and financial institutions took effect on January 1, 1968. The entire Act was not to take effect unless certain other tax legislation was enacted; it was. Another condition precedent to the effectiveness of the Act is discussed *infra,* p 383.

ment that the Act is unconstitutional and seeking injunctive relief against its enforcement. The Department of the Treasury, the State Treasurer and the commissioner of the Department of Revenue were named as defendants (appellees). On October 4, 1967, the Honorable William R. Beasley, Oakland circuit judge, granted defendants' motion for summary judgment, treating it as a motion to dismiss. Following affirmance by the Court of Appeals,[3] plaintiffs were granted leave to appeal here. 382 Mich 773.

Plaintiffs' first contention[4] is that the Act unconstitutionally deprives the individual plaintiff of the right to vote on referendum which he enjoys as a member of the public under Michigan Constitution of 1963, art 2, § 9. The section reads, in pertinent part, as follows:

"The people reserve to themselves  *  *  *  the power to approve or reject laws enacted by the legislature, called the referendum.  *  *  *  The power of referendum does not extend to acts  *  *  * to meet deficiencies in state funds and must be invoked in the manner prescribed by law[5] within 90 days following the final adjournment of the legislative session at which the law was enacted."

The first section[6] of the Act begins, "This act is for the purpose of meeting deficiencies in state

---

[3] *Kuhn* v. *Department of Treasury* (1968), 15 Mich App 364.

[4] Although plaintiffs have set forth ten questions in their brief we shall discuss only those we deem pertinent to decisions as to the validity of the Act and the propriety of the trial court's entry of summary judgment for defendants.

[5] The implementing legislation is MCLA § 168.473 *et seq.* (Stat Ann 1956 Rev § 6.1473 *et seq.*). Since the legislature of 1967 adjourned on August 3, 1967, and the record does not disclose that plaintiff Kuhn thereafter filed referendum petitions or took other statutory steps within the 90-day constitutional time limit, no question requiring construction of the implementing legislation is before us. But see *infra*, note 13.

[6] MCLA § 206.1 (Stat Ann 1970 Cum Supp § 7.557[101]). See also the preamble.

funds." Section 498[7] reads, "This act is expressly
declared to be necessary to meet established defi-
ciencies, present and future, in state funds." The
final section[8] provides that the Act shall not take
effect

"unless the estimated revenues to be collected
therefrom are required to meet deficiencies in state
funds resulting from appropriations for the ex-
penses of state government and all state institutions
contained in total appropriations enacted into law
during the current session of the legislature for the
fiscal year ending June 30, 1968."

Plaintiffs' complaint alleged that there was no defi-
ciency in state funds at the time the Act was
enacted.[9] They contend, therefore, that the legisla-
ture inserted the language regarding meeting defi-
ciencies in state funds into the Act in a devious
attempt to avoid the people's constitutional power
of referendum in view of the above-quoted restric-
tions on that power.

We will not concern ourselves with the legislators'
motives for inserting the language regarding defi-
ciencies in the Act. As pointed out in *C. F. Smith
Co.* v. *Fitzgerald* (1935), 270 Mich 659, at 681:

" 'Courts are not concerned with the motives
which actuate the members of the legislative body
in enacting a law but only in the results of their
actions. Bad motives might inspire a law which

---

[7] MCLA § 206.498 (Stat Ann 1970 Cum Supp § 7.557[1498]).

[8] MCLA § 206.499 (Stat Ann 1970 Cum Supp § 7.557[1499]).

[9] This allegation is assumed to be true for the purpose of deciding
whether the defendants were entitled to summary judgment. *Bielski*
v. *Wolverine Insurance Company* (1967), 379 Mich 280. Of course,
the "mere existence of issues of fact is  *  *  *  no bar to entry
of summary judgment for defendants, if, upon resolving all such
issues in favor of plaintiffs, the defendants would still be entitled
to a judgment as a matter of law. *Jones* v. *Wayne Circuit Judge*
[1931], 253 Mich 515." *Whittenberg* v. *Carnegie* (1950) 328 Mich
125, 126.

appeared on its face and proves to be valid and beneficial, while a bad and invalid law might be and sometimes is passed with good intent and the best of motives.' *People* v. *Gibbs* [1915], 186 Mich 127, 134 (Ann Cas 1917 B, 830)."

Our review is thus limited to determining whether the phrase "deficiencies in state funds" in art 2, § 9 of the 1963 Constitution encompasses future deficiencies—including those virtually or actually certain to occur as a result of present appropriations— or whether the language refers only to actual deficiencies in state funds existing at the time the statute in question was enacted.

We note at the outset that in construing constitutional language we look not for the interpretation which lawyers and legislators, or others well-versed in the subtle shades of meaning of which the English language is capable, might apply. Rather, we adopt the meaning which the ordinary citizens who ratified the constitution would attach to the words under consideration.

     " 'A Constitution is made for the people and by the people. *The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it.* "For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, *but rather that they have accepted them in the sense most obvious to the common understanding,* and ratified the instrument in the belief that that was the sense designed to be conveyed." (Cooley's Constitutional Limitations [6th ed], 81.)' " *Michigan Farm Bureau* v. *Secretary of State* (1967), 379 Mich 387, 391.

Furthermore, under a system of government based on grants of power from the people, constitutional provisions by which the people reserve to themselves a direct legislative voice ought to be liberally construed.[10] *Michigan Farm Bureau* v. *Secretary of State, supra;* 42 Am Jur 2d, Initiative and Referendum, § 5. Previous decisions of this Court requiring strict compliance with constitutionally mandated procedures for exercise of the powers of initiative and referendum should not be read as limiting the occasions upon which those powers may be exercised. See *Leininger* v. *Secretary of State* (1947), 316 Mich 644; *Scott* v. *Secretary of State* (1918), 202 Mich 629; *Thompson* v. *Secretary of State* (1916), 192 Mich 512.[11]

Applying the above principles of construction to the constitutional provision under consideration, we think the conclusion that "deficiencies in state funds" refers only to such deficiencies as exist at the time of passage of the Act in question is inescapable. If the drafters of the constitution wanted the people to more severely restrict the reserved power of referendum, they should have plainly so advised them by inserting "present or future," or some

[10] "In the last analysis, the people are the fountainhead of law in a democracy, and therefore, it is natural that the legislative article should contain a reservation by the people of the right to make laws directly, through use of the statutory initiative and referendum. The initiative and referendum provisions assure the citizenry of a gun-behind-the-door to be taken up on those occasions when the legislature itself does not respond to popular demands." Lederle, "The Legislative Article," in Pealy (ed), *The Voter and the Michigan Constitution in 1958* (1958), p 47. In the Populist and Progressive ferment of the early 1900's nearly half of the states, Michigan included, assured the people a direct legislative voice by way of constitutional amendment or revision. Bone, *The Initiative and the Referendum* (1959), pp 1, 2.

[11] The cited cases deal with the detailed procedures set forth in the 1908 Constitution, as amended, for the exercise of the powers of initiative and referendum. Michigan Const 1908, art 5, § 1. The present Constitution largely eliminates such procedural detail. Michigan Const 1963, art 2, § 9. See the Convention Comments following the section.

such phrase, before "deficiencies" in art 2, § 9.  We may not stretch the language ratified by the people so as to allow revenue statutes to avoid the possibility of referendum by reference to *anticipated* deficiencies,[12] resulting from future, simultaneous or even previous appropriations.  Since defendants have not denied there was no deficiency in state funds when the Act was passed, we hold that the Michigan Income Tax Act of 1967 was subject to referendum.

Accordingly, defendants were not entitled to summary dismissal of plaintiffs' declaratory judgment action prior to 90 days after adjournment of the 1967 legislative session.  Although this constitutional deadline for invoking the power of referendum has long since passed, plaintiffs' prayer for relief, relying vaguely on our equity powers, requests that we now "provide an adequate time for securing the required number of signatures."  To so act and thus allow referendum petition campaigns to go on for years flies in the face of the constitutionally mandated time limit.  We quote with approval from the Court of Appeals opinion:

"Under the circumstance that the attorney general was taking the position that the income tax act was not subject to the power of referendum, the plaintiffs were entirely justified in seeking a declaratory judgment as to their right of referendum before going to the trouble and expense of obtaining the large number of signatures required to place the question on the ballot.

"In a case of this kind the moving party is entitled to an expeditious disposition by the courts so that the right of referendum guaranteed by the

---

[12] When we previously held a statute not to be subject to referendum because it was passed to "meet deficiencies in state funds," the deficiencies existed at the time the statute was passed.  *Detroit Automobile Club* v. *Secretary of State* (1925), 230 Mich 623.

constitution is not jeopardized. The plaintiffs in this case obtained such an expeditious disposition at the trial court level.

"Their claim of appeal was filed October 19, 1967. No application for emergency consideration by our Court or for by-pass of our Court or for emergency consideration was filed with the Supreme Court.

"There is no provision in the constitution extending the time within which a referendum may be sought by reason of the pendency of litigation and it would be extraordinary for the courts to declare such an extension of time. If the plaintiffs desired to exercise the power of referendum they were obliged to proceed within the time provided by the constitution to obtain signatures. It is not claimed that any such effort was made. We conclude that the time for seeking a referendum on the income tax act has expired." (15 Mich App 364, at pp 375, 376.)

We hold plaintiffs' failure to comply with the constitutional requirements within 90 days from the adjournment of the legislature precludes any action at this time by this Court.

Plaintiffs' next contention is that the Act violates Michigan Constitution of 1963, art 4, § 24,[13] because in addition to imposing a tax it appropriates three million dollars to the revenue division of the Department of Treasury to cover initial expenses of administration and enforcement.[14] This Court has long and consistently said that art 4, § 24, and similar "one object" provisions in earlier constitutions, are to be construed reasonably "and not in so narrow and technical a sense as unnecessarily to embarrass legislation." *Ryerson* v. *Utley* (1868), 16 Mich 269, 277, citing *People, ex rel. Drake,* v.

---

[13] "No law shall embrace more than one object, which shall be expressed in its title. * * * *"

[14] MCLA § 206.496 (Stat Ann 1970 Cum Supp § 7.557[1496]).

*Mahaney* (1865), 13 Mich 481, 494.[15]  The object of the Act was to provide for creation and collection of a state income tax.  The appropriation in the Act was utterly germane to that object.  A statute may authorize the doing of all things which are in furtherance of the general purpose of the Act without violating the "one object" limitation of art 4, § 24, and so an appropriation in the Act to finance its administration and provisions for disposition of the taxes collected are proper and constitutional.  *Hall* v. *Burlingame* (1891), 88 Mich 438; *National Loan & Investment Co.* v. *City of Detroit* (1904), 136 Mich 451; *In re Brewster Street Housing Site* (1939), 291 Mich 313; *Local No. 1644, AFSC&ME, AFL-CIO* v. *Oakwood Hospital Corporation* (1962), 367 Mich 79.  For similar provisions in other Michigan taxing acts, see:  Michigan sales tax act, CLS 1961, § 205.75 (Stat Ann 1960 Rev § 7.546); Michigan use tax act, MCLA § 205.111 (Stat Ann 1960 Rev § 7.555[21]); Michigan intangibles tax act, MCLA § 205.136 (Stat Ann 1960 Rev § 7.556[6]).

The Act imposes an income tax on individuals of 2.6% on corporations of 5.6%, and on financial institutions of 7%.  It provides for a $1,200 exemption on each individual and for his dependents, for a sliding scale of tax credits for city income tax paid, and a sliding scale of tax credits for property owners and renters.

Plaintiffs say that the classification of taxpayers into three categories and the Act's provisions allowing credits for property tax and income tax liability violate Michigan Constitution of 1963, art 9, § 7, prohibiting an income tax graduated as to rate or base.  As the Court of Appeals said, that prohibition applies only to different rates of tax on different

---

[15] We adopt the remainder of this opinion from the opinion served by Justice DETHMERS, prior to leaving the Court.

segments of taxable income of the person being taxed. It does not prohibit the exclusion or exemption from the definition of taxable income of a portion of the taxed person's receipts. Undoubtedly what the drafters and adopters of that provision in the 1963 Michigan Constitution had in mind was the graduated scheme of the Federal income tax in which rates increase as taxable income does, and that power they wished to deny to the state. Neither the designation of three types of taxpayers with different applicable rates to each, nor the difference in exemptions or exclusions causes this Act to run amiss of that wish and does not violate art 9, § 7. The rates of tax imposed by the Act are uniformly applicable to all taxable income of every taxpayer in each class. As the Court of Appeals said:

"The credits for property and income taxes are allowed against the tax liability of all taxpayers without regard to their income. The limitations upon the amounts of credits that may be claimed by a taxpayer are not based upon the taxpayer's income; the effect is not to impose a tax violative of the constitutional prohibition against a tax graduated as to rate or base." (*Kuhn* v. *Department of Treasury, supra,* at p 371.)

By the same token, they are not violative of the equal protection clauses of the Fourteenth Amendment to the Constitution of the United States and of the Michigan Constitution of 1963, art 1, § 2.

Affirmed as modified. No costs, a public question being involved.

BLACK, ADAMS, and T. E. BRENNAN, JJ., concurred with T. M. KAVANAGH, C. J.

T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., did not sit in this case.