ACE TEX CORPORATION v CITY OF DETROIT

Docket No. 125994. Submitted June 5, 1990, at Detroit. Decided
October 1, 1990. Leave to appeal applied for.

> The Legislature enacted the City Utility Users Tax Act with an
> effective date of August 15, 1970, and an expiration date of
> December 31, 1972. After five successive amendments, the
> expiration date became June 30, 1988. The act provided that
> cities with a population of one million or more, after adopting
> an ordinance incorporating by reference the uniform city util-
> ity users tax ordinance as set forth in the act, would have the
> power to levy, assess, and collect a utility users tax. The City of
> Detroit adopted the uniform city utility users tax ordinance in
> 1970. On March 30, 1988, Ace Tex Corporation and others filed
> suit against the City of Detroit in Wayne Circuit Court seeking
> declaratory and injunctive relief, alleging that the act violated
> the Michigan Constitution in that it violated the title-object
> clause and because it was local or special legislation and was
> completely unenforceable. Alternatively, they argued that, if
> the act did not violate the constitution, it would not be enforce-
> able after the June 30, 1988, termination date contained in the
> statute. The court, Marvin R. Stempien, J., held that the act
> was not unconstitutional in any respect and that the taxing
> authority of the city expired on June 30, 1988. The City of
> Detroit appealed and plaintiffs cross appealed.

> The Court of Appeals *held*:

> 1. The main purpose of the act was to impose a tax and raise
> revenues for cities with populations of 1,000,000 or more. The
> termination date does not insert into the act something distinct
> or foreign to its purpose. Rather, it pertains to the main object
> of the legislation. The inclusion of the termination date in the
> act without the express mention of the termination date in the
> title of the act does not violate the title-object clause of the

REFERENCES

Am Jur 2d, Sales and Use Taxes § 57; State and Local Taxation
§ 438; Statutes §§ 94, 97-99.
Validity of statutory classifications based on population-tax stat-
utes. 98 ALR3d 1083.

constitution. The termination provision therefore is validly part of the act and is entitled to enforcement.

2. The city's argument that the Legislature has acquiesced in an opinion of the Attorney General that the termination provision is unconstitutional and that this evidence of legislative intent should persuade the courts to rule in the city's favor is rejected. Legislative intent is not at issue.

3. Plaintiffs' argument that, by designating how the revenues were to be spent, the act has more than one purpose and this purpose was not expressed in the title of the act is rejected. Provisions regarding the uses to which the revenue may be put are but incidental to the main purpose of the act.

4. The act is not constitutionally invalid as special or local legislation. The act is not limited to the City of Detroit. Furthermore, the population classification bears a reasonable relationship to the purpose of the statute: providing an additional source of revenue to hire and retain police officers in large metropolitan areas.

Affirmed.

1. CONSTITUTIONAL LAW — STATUTES — TITLE-OBJECT CLAUSE.

The constitutional requirement that no law shall embrace more than one object, which shall be expressed in its title, is met if an act centers on one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose (Const 1963, art 4, § 24).

2. STATUTES — POPULATION REQUIREMENTS — GENERAL ACTS.

An act that contains a population requirement can be sustained as a general act if the statute is applicable whenever the population requirement is met and the population classification bears a reasonable relationship to the purpose of the statute; the probability or improbability of other cities reaching the statutory population requirement is not the test of a general law.

3. CONSTITUTIONAL LAW — CITY UTILITY USERS TAX ACT.

The City Utility Users Tax Act, enacted in 1970 and, through a series of amendments, made effective until June 30, 1988, violated neither the title-object clause of the Michigan Constitution nor the constitution's prohibition against the enactment of special or local legislation in any case where a general act could be made applicable; the act was constitutionally valid, and the taxing authority provided by the act expired on June

30, 1988 (Const 1963, art 4, §§ 24 and 29; MCL 141.801 *et seq.*; MSA 5.3194[301] *et seq.*).

*Philip G. Tannian, P.C.* (by *Philip G. Tannian* and *Sara Oltarz-Schwartz*), and *Charfoos & Christensen, P.C.* (by *Michael Alan Schwartz* and *David R. Parker*), for Ace Tex Corp.

*Schwendener & Valade, P.C.* (by *Benjamin O. Schwendener, Jr., Alan M. Valade,* and *Thomas G. Buford*), for Marathon Petroleum Co.

*Miller, Canfield, Paddock & Stone* (by *Carl H. von Ende, S. Allen Early, III,* and *Kathryn L. Ossian*), for defendant.

Before: CAVANAGH, P.J., and CYNAR and MARILYN KELLY, JJ.

CAVANAGH, P.J. Defendant City of Detroit appeals and various plaintiffs cross appeal from the decision of the trial court granting in part and denying in part plaintiffs' motion for summary disposition. We affirm.

Under the provisions of the City Utility Users Tax Act, MCL 141.801 *et seq.*; MSA 5.3194(301) *et seq.*, cities with a population of one million or more, after adopting an ordinance incorporating by reference the uniform city utility users tax ordinance as set forth in the act, have the power to levy, assess, and collect a utility users tax. In 1970, the City of Detroit took advantage of the state statute and adopted the uniform city utility users tax ordinance. Detroit Ordinances, § 18-11-1.

As originally enacted, the act provided for an effective date of August 15, 1970, and an expiration date of December 31, 1972. 1970 PA 198; MCL 141.807; MSA 5.3194(307). In five successive enactments, the Legislature amended the act to extend

the expiration date. At the time this appeal was filed, the act had a June 30, 1988, expiration date. 1972 PA 309, 1975 PA 118, 1979 PA 34, 1981 PA 108, and 1984 PA 349; MCL 141.807; MSA 5.3194(307).

Another provision of the act stipulated that revenue raised was to be used exclusively to retain or hire police officers and, if the revenue collected exceeded a certain amount, the rate of tax imposed could be lowered or the excess amount could be used to hire and retain additional police officers. 1970 PA 198, as amended by 1979 PA 34, 1981 PA 108, and 1984 PA 349; MCL 141.802; MSA 5.3194(302).

On March 30, 1988, plaintiffs brought an action against the defendant City of Detroit seeking declaratory and injunctive relief. In their amended complaint, plaintiffs alleged that, because the act violated the Michigan Constitution, Const 1963, art 4, § 24 and § 29, it was completely unenforceable. In the alternative, if the act did not violate the constitution, plaintiffs urged the circuit court to declare that the act was not enforceable after June 30, 1988, the sunset or termination date contained in the statute.

On December 15, 1989, plaintiffs moved for summary disposition repeating their allegations that the act was unconstitutional because it contained more than one object contrary to § 24, the title-object clause of the state constitution, and because it was local or special legislation contrary to § 29. If the act was declared constitutional, plaintiffs argued, they were still entitled to prevail in part because the city's authority to collect the utility tax expired on June 30, 1988.

In response, the city maintained that the termination date or sunset provision contained in MCL 141.807; MSA 5.3194(307) was an object of the

legislation not expressed in the act's title; therefore the sunset provision was constitutionally infirm and should be severed from the rest of the act. The city based its argument in part on opinions issued by the Attorney General's office which concluded that the sunset provisions contained in a number of statutes violated Const 1963, art 4, § 24. More specifically, because the title of the City Utility Users Tax Act did not reflect the fact that it contained a termination date, the termination provision was unconstitutional and the act could not be repealed, expire, or terminate as provided. OAG, 1987-1988, No 6438, pp 80, 90 (May 21, 1987).

The city also used these same opinions from the Attorney General to argue that the doctrine of legislative acquiescence applied. Evidence of legislative inactivity after an administrative interpretation of a statute can be construed as legislative consent to that interpretation. In the present case, the city claimed that the actions of the Legislature subsequent to the act's expiration date evidenced the legislative intent that the act continue in effect after June 30, 1988.

On January 3, 1990, the circuit court issued its opinion granting in part and denying in part plaintiffs' motion on the basis of the court's conclusion that the act was not unconstitutional in any respect. Consequently, the circuit court ruled that the taxing authority of the city expired on June 30, 1988.

On appeal, the city renews its challenge to the constitutionality of the sunset provision on the basis of the title-object clause and reiterates its argument on legislative acquiescence. The city's appeal is joined by an intervening appellant, the Attorney General, who claims that, in order to satisfy Const 1963, art 4, § 24, an act that repeals

another act must give notice of the repeal in its title. The intervenor maintains that this same notice requirement should be extended to self-re-pealers. Furthermore, the intervenor insists that the circuit court erred in concluding that because an act's effective date does not have to be in the title, the same can be said as to an act's expiration date.

On cross appeal, plaintiffs contend that the entire legislation is unconstitutional because the act contains more than one object and these objects are not all expressed in the act's title. Certain provisions of the act designate how the revenue is to be spent and this designation is a distinct object of the legislation not stated in the act's title. Furthermore, they argue, the act is local or special legislation because the population requirement limits the act's application to cities with a population of one million or more.

The initial inquiries for this Court are whether the legislation embraces an object not expressed in the title of the act and whether the legislation embraces more than one object. The law is well settled that legislation challenged on a constitutional basis is clothed in a presumption of constitutionality. *Johnson v Harnischfeger Corp,* 414 Mich 102, 112; 323 NW2d 912 (1982). Every reasonable presumption must be indulged in favor of an act's constitutionality. *Rohan v Detroit Racing Ass'n,* 314 Mich 326, 341; 22 NW2d 433 (1946).

Const 1963, art 4, § 24 provides:

No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title.

In *Builders Square v Dep't of Agriculture,* 176 Mich App 494, 497-498; 440 NW2d 639 (1989), lv den 433 Mich 912 (1989), this Court summarized the law regarding this issue:

> The purpose of the title-object clause is to prevent the Legislature from passing laws not fully understood and to avoid bringing into one bill subjects diverse in their nature and having no necessary connection. *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 467; 208 NW2d 469 (1973), citing *People v Carey,* 382 Mich 285; 170 NW2d 145 (1969). The goal of the title-object clause is notice, not restriction of legislation, and the title-object clause is only violated where the subjects are so diverse in nature that they have no necessary connection. *Constitutionality of 1972 PA 294, supra,* p 467. The object of a law is its general purpose or aim. *Local No 1644, AFSCME v Oakwood Hospital Corp,* 367 Mich 79; 116 NW2d 314 (1962); *City of Livonia v Dep't of Social Services,* 423 Mich 466; 378 NW2d 402 (1985). A statute may authorize the doing of all things which further its general purpose. *Constitutionality of 1972 PA 294, supra,* p 466, quoting *Kuhn* [v *Dep't of Treasury,* 384 Mich 378, 387-388; 183 NW2d 796 (1971).]
>
> Where the issue is the sufficiency of notice provided by the title, the title need not serve as an index of all the act's provisions. *People v Milton,* 393 Mich 234; 224 NW2d 266 (1974).

The standard for determining the question of constitutionality has been stated as follows:

> [I]f the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose, the constitutional requirement is met. [*Loomis v Rogers,* 197 Mich 265, 271; 163 NW 1018 (1917).]

Only the general object and not all the details and incidents of a statute need be indicated in the title. *People v Sowall,* 279 Mich 261, 266; 271 NW 751 (1937). Whether a provision is germane to its purpose depends upon its relationship to the object of the act. *Builders Square, supra,* p 498.

The title to the City Utility Users Tax Act reads:

> AN ACT to permit the imposition and collection by cities of a population of 1,000,000 or more, of a utility users tax; to provide the procedure for, and to require the adoption of a prescribed uniform city utility users tax ordinance by cities desiring to impose and collect such a tax; to limit the rate of such tax; to prescribe the powers and duties of the state commissioner of revenue; and to provide for appeals.

The trial court concluded that the main purpose of the act was to impose a tax and raise revenues for cities with populations of 1,000,000 or more. The trial court also concluded that the termination date or sunset provision, closely akin to a beginning effective date, does not insert into the act something distinct or foreign to its purpose. The sunset provision pertains to the main object of the legislation. We agree with the well-reasoned and thoughtful approach of the trial judge.

In our opinion, the sunset provision does not introduce into the legislation a subject diverse in nature from the main object of the act. The termination date relates directly to the duration of the taxing authority granted by the statute. Standing alone, the sunset provision has no significance. Its importance depends completely on its relationship to the main purpose of the act. The same cannot be said of provisions from one act which attempt to repeal a different act.

In *Attorney General v Hill-Davis Co,* 261 Mich

89; 245 NW 579 (1932), a provision of 1931 PA 327 attempted to repeal statutes that regulated partnerships after it was indicated in the act's title that acts and parts of acts relating to corporations would be repealed. The repealing provision introduced a subject matter into the legislation which was very different from the regulation of corporations. The repeal in that context did not directly relate to the main object of the legislation—the regulation of corporations. The significance of the repealing provision depended completely on its relationship to a different act.

Although we would agree that a repeal in one act which affects another act could jeopardize the requirement of notice guaranteed by our constitution if the repeal was not declared in the first act's title, we have not been persuaded that a self-repealer presents the same problem. By declaring its purpose to provide the procedure for imposing and collecting such a tax, we believe the act's title challenges the reader's attention to provisions in the act which might affect its duration.

We also disagree with the city's argument that the Legislature has acquiesced in the Attorney General's opinion that the sunset provision is unconstitutional and that this evidence of legislative intent should persuade the courts to rule in the city's favor. If the state's lawmakers are silent in the face of a judicial or an administrative interpretation of a statute, we could construe this silence as a vote of confidence. See *Craig v Larson,* 432 Mich 346, 353; 439 NW2d 899 (1989). However, in this case, disposition does not entail our reviewing a decision interpreting legislative intent. Plaintiffs have raised a constitutional challenge and legislative intent is not an issue.

Plaintiffs also relied on the title-object clause to argue in their cross appeal that, by designating

how the revenues were to be spent, the act has more than one purpose and this purpose was not expressed in the act's title. The trial court relied on *Kuhn v Dep't of Treasury,* 384 Mich 378; 183 NW2d 796 (1971), when it held that the purpose for which the revenues may be spent is another provision which is germane, auxiliary or incidental to the object of the act and again we must agree. Provisions regarding the uses to which the revenue may be put are but incidental to the main purpose of the act. The manner in which the funds are used is both germane and related to the taxation itself.

In the final argument raised on cross appeal, plaintiffs contend that the act is special or local legislation because it is only available to cities with a population of one million or more.

Const 1963, art 4, § 29 provides:

> The legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question.

An act that contains a population requirement can be sustained as a general act if the statute is applicable whenever the population requirement is met and the population classification bears a reasonable relationship to the purpose of the statute. *Dearborn v Wayne Co Bd of Supervisors,* 275 Mich 151, 155; 266 NW 304 (1936). The probability or improbability of other cities reaching the statutory population requirement is not the test of a general law. *Id.,* p 157.

In the present case, the terms of the act do not limit its application to the City of Detroit. The act automatically applies to any city which attains the required population. The population classification

is open-ended and it is possible for other cities to qualify for the benefits of the act if and when their populations meet the statutory standard.

As to whether the population classification bears a reasonable relationship to the purpose of the statute, the trial court noted that a purpose of the legislation was to provide large cities with a new source of revenue for public safety. This Court has already acknowledged that metropolitan population centers have a far greater problem preserving the public peace than their rural neighbors. *Lucas v Wayne Co Bd of Road Comm'rs,* 131 Mich App 642, 652; 348 NW2d 660 (1984), lv den 418 Mich 945 (1984). In the present case, we find that the population classification is reasonably related to the need for an additional source of revenue to hire and retain police officers.

Affirmed.