CAIN v DEPARTMENT OF CORRECTIONS

Docket Nos. 239116, 240101. Submitted November 6, 2002, at Lansing. Decided December 27, 2002, at 9:30 A.M. Leave to appeal sought.

John C. Cain and other state prison inmates brought a class action in the Court of Claims and a class action in the Ingham Circuit Court against the Department of Corrections regarding the defendant's policy directives on inmates' possession of personal property. Following proceedings in those courts, the Court of Appeals, and the Supreme Court regarding the disqualification of James R. Giddings, J., as the presiding judge in the actions, the Supreme Court returned the matter to Judge Giddings to determine the advisability of appointing special counsel for the plaintiffs. 451 Mich 470 (1996). An agreement was reached that Prison Legal Services of Michigan (PLSM) would represent the plaintiffs and that the defendant would provide PLSM with office space. PLSM's office space eventually was moved to the Egeler Correctional Facility, and the plaintiffs' class representatives were permitted to transfer to that facility. The defendant subsequently sought to have the PLSM offices removed from the Egeler facility. Following a hearing, Judge Giddings entered orders denying the defendant's request to remove the PLSM offices from the Egeler facility and barring the defendant from transferring from that facility to other prison facilities the prisoners involved in the litigation. The defendant appealed by leave granted from both orders.

The Court of Appeals *held*:

1. The trial judge erred in denying the defendant's motion to remove the PLSM offices from the grounds of the Egeler facility and in concluding that the motion was frivolous and warranted the imposition of sanctions. The plaintiffs' interest in the continued advantage of an on-site legal office cannot take precedence over the defendant's interest in exercising its judgment over the management of prisons under its authority. The plaintiffs' interest did not implicate any constitutional right because the plaintiffs have no constitutional right to a legal office on prison grounds. The defendant, on the other hand, has a legitimate penological interest in managing its prison facilities.

2. The trial judge erred in precluding the transfer of litigants-inmates from the Egeler facility. Prisoners have no constitutionally protected liberty interest in remaining in a particular wing of a prison or a particular institution within a prison system.

Reversed and remanded.

1. PRISONS AND PRISONERS — LAW OFFICES ON PRISON GROUNDS.

The powers of the Department of Corrections to manage state prisons include the power to remove from prison grounds law offices placed there in support of prisoners litigating an action against the department.

2. PRISONS AND PRISONERS — INMATE PLACEMENT.

Prisoners have no constitutionally protected liberty interest in remaining in a particular wing of a prison or a particular institution within a prison system.

Prison Legal Services of Michigan, Inc. (by *Mark Granzotto* and *Sandra Girard*), for the plaintiffs.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *A. Peter Govorchin*, Assistant Attorney General, for the defendant.

Before: WHITBECK, C.J., and HOOD and KELLY, JJ.

HOOD, J. In Docket No. 239116, defendant appeals by leave granted the trial judge's order denying its request to remove plaintiffs' attorneys, Prison Legal Services of Michigan (PLSM), from its offices located at the Egeler Correctional Facility. In Docket No. 240101, defendant appeals by leave granted the trial judge's order barring defendant from transferring certain prisoners from the Egeler Correctional Facility. We reverse.

After eight years of pretrial litigation, the Supreme Court in *Cain v Dep't of Corrections*, 451 Mich 470, 518; 548 NW2d 210 (1996), returned the case to the original trial judge with the directive to investigate

the advisability of appointing special counsel.[1] An agreement was reached that PLSM would represent plaintiffs and defendant would "house" PLSM in office space until the completion of the case. In December 1997, PLSM's office space was moved to the Egeler Correctional Facility, and plaintiffs' class representatives and prisoner workers were permitted to transfer to the Egeler facility as shown by a court order.

In 2001, defendant sought to have the employees of PLSM, located in office space in trailers on the property, removed from prison grounds. The rationale for the elimination of the office space varied. One proffered reason given for the elimination of the office space was the need to renovate the facility. However, it was later theorized that PLSM trailers would be utilized to house supplies that could not be stored elsewhere because of potential fire code violations. Ultimately, it was alleged that Executive Order No. 2001-9 required defendant to reduce its budget expenditures by $54.9 million. As a result of budget reductions, defendant would return prisoner-parole violators to the Egeler facility who were currently housed in county jails and utilize the trailers for storage. In response, plaintiffs alleged that the basis for the removal of the office staff was not credible and would unreasonably burden plaintiffs' preparation of the case. Following an evidentiary hearing, the trial judge rendered factual findings in favor of plaintiffs and denied the motions to remove PLSM offices and transfer to other facilities the prisoners participating in the litigation.

---

[1] The underlying foundation for this litigation is set forth in *Cain*, *supra* at 473-474.

We conclude that the focus of the underlying hearing—the factual basis and motivation of defendant to remove PLSM as opposed to the desire of plaintiffs, who are civil litigants despite their status as inmates, to conveniently and cost effectively manage their litigation with offices located on prison grounds—was inappropriate.[2] Rather, the real question is whether plaintiffs' interest in the continued advantage of an on-site legal office takes precedence over defendant's interest in exercising its judgment over the management of prisons under its authority. On the basis of our review of United States Supreme Court authority, we conclude that plaintiffs' interest does not supersede defendant's interest in prison management.

In *Lewis v Casey*, 518 US 343, 347; 116 S Ct 2174; 135 L Ed 2d 606 (1996), the United States Supreme Court reviewed a case involving prisoners' claims that the Arizona state prison system was denying inmates their constitutional right of access to the courts by failing to provide sufficient law libraries in prisons. The prisoners alleged, inter alia, that library staff was not adequately trained and materials were not kept updated. *Id.* The federal district court agreed with the prisoners that the libraries were inadequate, and that two particular groups of prisoners—those who did not speak English and those who were segregated for security reasons—were disadvantaged by the system's inadequacies more than the general prison population. *Id.* The district court appointed a special master to investigate and recommend relief. *Id.* The district court eventually entered an injunctive order specify-

---

[2] See *Knop v Johnson*, 977 F2d 996, 1005, n 6 (CA 6, 1992), noting the distinction between use of taxpayer dollars for a defense in a criminal trial as opposed to preparation of a prisoner lawsuit.

ing library hours, the number of hours inmates could use the library each week, the qualifications for prison librarians, and so forth. *Id.*

The Supreme Court, in reversing, relied on *Bounds v Smith,* 430 US 817; 97 S Ct 1491; 52 L Ed 2d 72 (1977), which held that " 'the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.' " *Lewis, supra* at 346, quoting *Bounds, supra* at 828. The Court then clarified the scope of the holdings in *Bounds:*

> It must be acknowledged that several statements in *Bounds* went beyond the right of access recognized in the earlier cases on which it relied, which was a right to bring to court a grievance that the inmate wished to present . . . . These statements appear to suggest that the State must enable the prisoner to *discover* grievances, and to *litigate effectively* once in court. . . . These elaborations upon the right of access to the courts have no antecedent in our pre-*Bounds* cases and we now disclaim them. To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is effectively to demand permanent provision of counsel, which we do not believe the Constitution requires. [*Lewis, supra* at 354 (emphasis in original).]

Significantly for the instant case, the Supreme Court's decision was based not only on the scope of *Bounds,* but also on judicial deference to prison administration. *Id.* at 361. The Court held that the district court failed to accord adequate deference to the prison authorities. For example, in finding that the segregated prisoners were unfairly denied adequate library time, the district court failed to acknowledge

the legitimate penological interests for segregating violent prisoners. *Id.* at 361-362. The Court also criticized the district court's injunctive order for being "inordinately—indeed, wildly—intrusive." *Id.* at 362. The Court described the injunctive order as "the *ne plus ultra* of what our opinions have lamented as a court's 'in the name of the Constitution, becoming . . . enmeshed in the minutiae of prison operations.' " *Id.,* quoting *Bell v Wolfish,* 441 US 520, 562; 99 S Ct 1861; 60 L Ed 2d 447 (1979).

Additionally, in *Shaw v Murphy,* 532 US 223; 121 S Ct 1475; 149 L Ed 2d 420 (2001), the respondent, Murphy, was an "inmate law clerk" who provided legal assistance to his fellow prison inmates. *Id.* at 225. Murphy learned that another inmate had been charged with assaulting a correctional officer. Murphy tried to send this inmate a letter offering to assist him with his defense, but the letter was intercepted. *Id.* at 225-226. Murphy's attempt to send the letter was a violation of prison rules because of the difference in prison security levels. *Id.* at 226. Murphy was punished for insolence and interference with a due process hearing. *Id.* Murphy brought a class action against prison officials under 42 USC 1983, seeking declaratory and injunctive relief. He claimed that his punishment violated due process, the rights of inmates to access the courts, and Murphy's First Amendment right to provide legal assistance to other inmates. *Id.* 226-227.

Analyzing Murphy's constitutional claim, the United States Supreme Court concluded that the legal advice content in Murphy's attempted communication to the charged inmate was not entitled to First Amendment protection. *Id.* at 230. The Court held that, under *Tur-*

*ner v Safley*, 482 US 78; 107 S Ct 2254; 96 L Ed 2d 64
(1987), the prison had a legitimate penological inter-
est in restricting communications that outweighed
Murphy's constitutional right, and the content of the
communication did not affect that balance. *Id.* The
Court then stated:

> Moreover, under *Turner* and its predecessors, prison offi-
> cials are to remain the primary arbiters of the problems
> that arise in prison management. . . . Courts are ill equipped
> to deal with the increasingly urgent problems of prison
> administration and reform. If courts were permitted to
> enhance constitutional protection based on their assess-
> ments of the content of the particular communications,
> courts would be in a position to assume a greater role in
> decisions affecting prison administration. Seeking to avoid
> unnecessarily perpetuating the involvement of the federal
> courts in affairs of prison administration . . . we reject an
> alteration of the *Turner* analysis that would entail addi-
> tional federal court oversight. [*Id.* at 230-231 (internal quo-
> tation marks and parentheses omitted).]

It is clear from these cases that a prisoner's consti-
tutional right of access to the courts must be bal-
anced against legitimate penological interests, and a
court cannot unreasonably intrude into prison man-
agement merely to give prisoners more effective
access than the constitution requires. Applying the
*Lewis* and *Shaw* balancing test by analogy to the
instant case, we conclude that the trial judge erred in
requiring defendant to continue housing PLSM for the
duration of the case. Plaintiffs' interest did not impli-
cate any constitutional right because plaintiffs have
no constitutional right to a legal office on prison
grounds. *Knop v Johnson*, 977 F2d 996, 1005, 1014
(CA 6, 1992). On the other hand, defendant has a
legitimate penological interest in managing its prison

facilities—including making decisions about where new and returning prisoners will be received, where supplies will be stored, how clothing will be issued, what recreational activities will be provided, and the number of auxiliary trailers it can safely deploy. When the trial judge scrutinized these decisions, second-guessed their soundness, and substituted its own judgment about defendant's plans for the old store and Building 142, he unreasonably intruded into prison management decisions.[3] Accordingly, the trial judge erred in denying defendant's motion to remove the PLSM offices from prison premises and erred in concluding that the motion was frivolous and warranted the imposition of sanctions.

Defendant further alleges that the trial judge erred in precluding the transfer of certain inmates from the Egeler facility. We agree. Prisoners have no constitutionally protected liberty interest in remaining in a particular wing of a prison or a particular institution within a prison system. *Williams v Faulkner*, 837 F2d 304, 309 (CA 7, 1988); *Thomas v Deputy Warden*, 249 Mich App 718, 726-727; 644 NW2d 59 (2002).

Reversed and remanded. We do not retain jurisdiction.

---

[3] While the trial judge also concluded that defendant had an improper motivation for its request to remove the PLSM offices, judges are not to concern themselves with the motivation of an administrative decision or rule. See, e.g., *Kuhn v Dep't of Treasury*, 384 Mich 378, 383-384; 183 NW2d 796 (1971). Improper motivation may prove to be valid and beneficial, while a law or rule passed with good intent and the best of motives may prove to be bad and invalid. *Id.*