*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

COMMITTEE TO BAN FRACKING IN
MICHIGAN,

        Plaintiff-Appellant,

v

BOARD OF STATE CANVASSERS,

        Defendant-Appellee.

FOR PUBLICATION
January 21, 2021

No.  354270
Court of Claims
LC No.  20-000125-MM

Before:  CAVANAGH, P.J., and JANSEN and SHAPIRO, JJ.

SHAPIRO, J. (*dissenting*).

I respectfully dissent.

The question raised in this case is of significant public importance:  whether MCL 168.472a, which limits petition signature gathering to a period of 180 days, unconstitutionally burdens the right of citizen initiative established in Article 2, § 9, of Michigan's 1963 Constitution. Despite the fact that this question has been before the judiciary since first raised by plaintiff in 2016, we have yet to provide an answer.[1]  The majority's approach would again put the question

---

[1] Plaintiff sought a declaratory judgment on this issue in 2016, and we affirmed the dismissal of that action because plaintiff had not established an "actual controversy."  On November 5, 2018, plaintiff submitted its petition with the required number of signatures to the Secretary of State for a vote, if necessary, in the 2020 election.  The Director of Elections refused to accept the petition for filing and plaintiff filed suit in the Court of Claims seeking to have the petition accepted and challenging the constitutionality of the 180-day limit.  On April 2, 2020, we held that the Secretary acted improperly in refusing to accept the petition for canvassing but did not address the constitutional question because the Board of State Canvassers had not decided the adequacy of the signatures.  Although it did not seek leave to appeal to the Supreme Court, the Board of Canvassers still refused to accept the signatures for nearly one month and then took another month to complete the canvass, finally issuing its rejection on June 8, 2020.  Having been denied ballot access,

off to some other day.  However, no further delay is jurisdictionally required as plaintiff's request for a declaratory judgment is proper and the Supreme Court's 2020 order denying mandamus does not have preclusive effect because it does not state the basis for the denial or provide other guidance regarding this constitutional question.  See *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012) ("An order of this Court is binding precedent if it constitutes a final disposition of an application and contains a concise statement of the applicable facts and reasons for the decision.").  See also *Hoffman v Silverthorn*, 137 Mich 60, 64-65; 100 NW 183 (1904) (holding that when the Supreme Court denies mandamus the Court does not decide the merits of the application for purposes of res judicata).

I would therefore address the constitutional question, conclude that MCL 168.472a violates Article 2, § 9 of the 1963 Constitution and direct the Court of Claims to issue an appropriate declaratory judgment.

## I.  MANDAMUS DENIAL AND JURISDICTION

The majority concludes that the Supreme Court's denial of mandamus regarding plaintiff's 2020 petition deprives the Court of Claims of its normal jurisdiction to grant declaratory judgments.  However, the majority offers very little explanation for this extraordinary holding. The majority seems to conclude that because plaintiff has exhausted its claim for 2020 ballot access that it is thereafter precluded from ever bringing a declaratory-judgment action on the basis of the claim that the 180-day limit is unconstitutional.  However, with access to the 2020 ballot a moot question, the plaintiff in this action is no longer acting as a "person who feels aggrieved by any determination made by the board of state canvassers" as to "the sufficiency or insufficiency of an initiative petition . . . ."  MCL 168.479(1)-(2).  While access to the 2020 ballot ended with the Supreme Court's denial of mandamus, the underlying legal issue has not been resolved.

Plaintiff is now in the position of a proposal committee that seeks a determination of its responsibilities to obtain ballot access in the future.  The time limit for signature gathering remains a justiciable issue and declaratory-judgment actions against the state begin in the Court of Claims. MCL 600.6419(1)(a).  The majority fails to appreciate that even though plaintiff "has exhausted its legal remedies with respect to judicial review of defendant's insufficiency determination of its initiative petition," plaintiff—like any other litigant—may nonetheless bring an action for a declaratory relief if there is an "actual controversy."  MCR 2.605(A)(1).  In 2017, we concluded that plaintiff had not established an actual controversy when it had not yet had its petition rejected by the Board on the basis of the 180-day rule:

> This is not a case in which plaintiffs have collected the number of required petition signatures, albeit during a time-frame outside the 180–day rule, filed those petitions at least 160 days before the election, had those petitions rejected by defendants as

---

plaintiff sought a writ of mandamus in the Supreme Court per MCL 168.479.  The Supreme Court denied relief, without comment.  Plaintiff then returned to the Court of Claims, which ruled against it on July 30, 2020, on the ground that the Supreme Court had exclusive jurisdiction to hear the constitutional challenge.  Plaintiff now appeal that decision.

insufficient, and then had their ballot proposal denied. In fact, defendants had made no adverse claim and had taken no adverse action that impacted plaintiffs' legal rights in any way before plaintiffs filed this action. That is, no controversy between the parties existed. Rather, plaintiffs are projecting that, in the future, if they ever collect the precise number of petition signatures required for their ballot initiative, they will be rejected by defendants because they do not meet the requirements of the 180–day rule. Thus, plaintiffs' claim sets forth a possible—not actual—controversy that may arise in the future which rests upon contingent, uncertain events that may not occur at all and the injury plaintiffs seek to prevent is merely conjectural or hypothetical. [*Comm to Ban Fracking in Mich v Dir of Elections*, unpublished per curiam opinion of the Court of Appeals, issued March 14, 2017 (Docket No. 334480), p 1.]

When plaintiff sought a declaratory judgment from the Court of Claims in 2020, however, its claim was no longer hypothetical. Plaintiff had collected the required number of signatures, submitted its petition to the Board, and the Board rejected the petition because many of the signatures were collected more than 180 days before the petition was filed. Thus, plaintiff clearly now had standing to seek a declaratory judgment in the Court of Claims that the 180-day rule was unconstitutional.

I would conclude that plaintiff continues to have standing to seek a declaratory judgment even though the 2020 election has passed. This is not a case where plaintiff "only ask[s] for a declaratory judgment because it perhaps may be needed in the future . . . ." *League of Women Voters of Mich v Secretary of State*, ___ Mich ___, ___; ___ NW2d ___ (2020) (Docket Nos. 160907, 160908); slip op at 17-18. Rather, plaintiff obtained the requisite number of petition signatures once and it intends to file again. Seeking clarification of the statute prior to another round of signature gathering is wholly consistent with the purpose of allowing a party to seek declaratory relief. Declaratory-judgment actions are of particular significance where a constitutional question is at issue. In *UAW v Central Michigan Univ Trustees*, 295 Mich App 486, 493-497; 815 NW2d 132 (2012), the plaintiffs sought a declaratory judgment that a policy barring CMU employees from running for office was unconstitutional even though no CMU employee had attempted to become a candidate. We held that the plaintiffs had standing, noting that the purpose of a declaratory judgment is "to enable the parties to obtain adjudication of rights before an actual injury occurs, to settle a matter before it ripens into a violation of the law . . . or to avoid multiplicity of actions by affording a remedy for declaring in expedient action the rights and obligations of all litigants." *Id*. at 496, quoting *Rose v State Farm Mut Auto Ins Co*, 274 Mich App 291, 294; 732 NW2d 160 (2006) (emphasis removed). Considering "that the bar for standing is lower when a case concerns election law," *League of Women Voters*, ___ Mich at ___; slip op at 18, plaintiff has shown a continuing actual controversy.

Alternatively, to the extent that an actual controversy no longer exists, a court may address a moot issue that "is one of public significance that is likely to recur, yet evade judicial review . . . ." *PT Today, Inc v Comm of Office of Fin and Ins Servs*, 270 Mich App 110, 126; 715 NW2d 398 (2006). It seems absurd to suggest that this issue of public importance may not be heard until plaintiff (or some other petitioner) (a) again goes to the enormous effort of signature gathering, (b) is denied ballot access based on MCL 168.472a by the Board and (c) seeks mandamus from the Supreme Court with the ballot deadline breathing down that Court's neck. Indeed, it would be

hard to define a less efficient way for the courts to address this important question. And of course, the Supreme Court could again deny mandamus without addressing the substantive issue, which under the majority's approach would bring us back to square one and further delay judicial review of MCL 168.472a. I cannot conclude that in amending MCL 168.479 the Legislature intended to forever bar a declaratory-judgment action as to the constitutionality of MCL 168.472a, and I cannot approve of the Catch-22 allowed for by the majority that effectively precludes judicial review.

Even though plaintiff's access to the 2020 ballot is foreclosed, the constitutional question remains an issue for which a declaratory judgment is proper. Initiative petitions will almost certainly be filed for the 2022 and 2024 elections and according to plaintiffs they will be among the groups seeking ballot access. Either an actual controversy exists or the substantive issue should nonetheless be reviewed because it is publicly significant and likely to evade judicial review. Accordingly, I would hold that the Court of Claims has jurisdiction to hear plaintiff's request for declaratory relief on the merits.

## II. DOES MCL 168.472A VIOLATE THE RIGHT OF STATUTORY INITIATIVE ESTABLISHED BY ART 2 § 9 OF THE 1963 CONSTITUTION?

Article 2, § 9 of the 1963 Constitution established the right to initiative reserved by the people:

> The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative . . . . To invoke the initiative . . . , petitions signed by a number of registered electors, not less than eight percent . . . of the total vote cast for all candidates for governor at the last preceding general election at which a governor was elected shall be required.

The language of the provision places *no* limit on the time to gather signatures. On the face of the provision, therefore, it is difficult to see the basis for the Legislature to place a 180-day limit on the time to gather signatures. Article 2, § 9, establishes rights in the people alone, without any language suggesting that the Legislature may limit those rights. There is an overriding rule of constitutional construction that requires that "specific power[s] the people themselves have expressly reserved . . . be saved if possible as against conceivable if not likely evasion or parry by the legislature." *Mich Farm Bureau v Hare*, 379 Mich 387, 393; 151 NW2d 797 (1967). "[C]onstitutional provisions by which the people reserve to themselves a direct legislative voice ought to be liberally construed." *Kuhn v Dep't of Treasury*, 384 Mich 378, 385; 183 NW2d 796 (1971). See also *Farm Bureau Mutual Ins Co of Mich v Commissioner of Ins*, 204 Mich App 361, 367; 514 NW2d 547 (1994).

The Board relies on *Consumers Power Co v Attorney General*, 426 Mich 1; 392 NW2d 513 (1986), as its primary authority for the constitutionality of the 180-day limit. However, *Consumers Power* did not address the people's right to initiative nor the text of Article 2, § 9. That case held that, *as to a petition to amend the Constitution*, the Legislature may impose a *presumption* of staleness to signatures gathered outside a 180-day period. *Consumers Power* found that MCL 168.472a was constitutional as to a petition to amend the Constitution, which is governed by Article 12, § 2 of the Constitution, not Article 2, § 9, which is at issue here. And unlike Article

-4-

2, § 9, Article 12, § 2 provides that "[a]ny such petition shall be in the form, and shall be signed and circulated in such manner, as prescribed by law." This grant of authority to the Legislature is *not* present in Article 2, section 9. Thus, *Consumers Power* undermines the Board's position because in Article 12, § 2, the drafters of the Constitution demonstrated that they understood what language would provide the Legislature with broad power over the petition process and they chose not to include that language in Article 2, § 9.

Even if one were to view *Consumers Power* as relevant, the nature of the Legislature's actions at issue in that case were far less burdensome on the right to petition than is the statute we consider in this case. The "presumption of staleness" limitation approved in *Consumers Power* did not place any legal limit on the time allowed for circulation. That presumption is rebuttable and allows the petitioner an opportunity to demonstrate that individuals who signed outside the 180 days were still registered to vote in Michigan and so entitled to have their signature counted. *Consumers Power* explicitly relied on the distinction between an unrebuttable and rebuttable presumption and did not approve a hard and fast-time limit: *"*The statute does not set a 180-day time limit for obtaining signatures. *The statute itself establishes no such time limit*. It states rather that if a signature is affixed to a petition more than 180 days before the petition is filed it is presumed to be stale and void. But that presumption can be rebutted." *Consumers Power*, 426 Mich at 8 (emphasis added).

The presumption of staleness provides increased security in the petitioning process to ensure signature validity, but does not require the Board to disqualify all signatures outside the 180 days. Thus, even if one were to somehow incorporate the text from Article 12, § 2 into Article 2 § 9, MCL 168.472a would remain infirm. Even where an amendment is at issue, the Legislature and the courts may not impose "undue burdens" on the people's right to amend. See *Wolverine Golf Club v Secretary of State*, 384 Mich 461, 466; 185 NW2d 392 (1971) (quotation marks and citation omitted).

Moreover, it is well settled that Article 2, § 9, is self-executing and does not require any legislation for it to be applied. This was discussed at length in *Wolverine Golf Club v Hare*, 24 Mich App 711, 725; 180 NW2d 820 (1970): "Our only inquiry must be whether the statute is repugnant to the Constitution. It is settled law that the legislature may not act to impose additional obligations on a self-executing constitutional provision."[2]

---

[2] The Court further explained:

> To hold that the right of initiative reserved to the people of the State of Michigan is not self-executing is to ignore the expressed intent of the framers. This conclusion is more compelling in light of the perceptive opinion of Justice Bird in *Hamilton v Secretary of State* (1924), 227 Mich 111, 130:

> "The initiative found its birth in the fact that political parties repeatedly made promises to the electorate both in and out of their platforms to favor and pass certain legislation for which there was a popular demand. As soon as election was over, their promises were forgotten, and no effort was made to redeem them. These

Some administrative requirements may be imposed in order to ensure that the petitions follow a certain form and that the Board has the time to canvass them prior to preparation of the ballot. However, "[t]here is . . . an important distinction between statutes which protect the people from fraudulent attempts to bypass the legislature through initiative and those which create unnecessary obstacles to restrict the lawful use of intuitive." *Wolverine Golf Club*, 24 Mich App at 733. To the degree that "legislation supplementary to self-executing provisions" may be effective, "such law must not curtail the rights reserved, or exceed the limitations specified" in the Constitution. *League of Women Voters of Mich v Secretary of State*, 331 Mich App 156, ___; ___ NW2d ___ (2020) (Docket Nos. 350938, 351073); slip op at 11, rev'd in part on other grounds ___ Mich ___ (quotation marks and citation omitted). But that is exactly what MCL 168.472a does.

> While the Constitution places the duty of implementation of initiative and referendum provisions on the Legislature, it does so as an incident to the granting of a right to the people. Although administrative implementation is needed if the initiative process is to function smoothly, the administrative statutes *may not create unnecessary burdens which tend to restrict the constitutional right*. The spirit of

---

> promises were made so often and then forgotten that the electorate at last through sheer desperation took matters into its own hands and constructed a constitutional procedure by which it could effect changes in the Constitution and bring about desired legislation without the aid of the Legislature. It was in this mood that the electorate gave birth to the constitutional provision under consideration. In view of this I am persuaded that it was not the intention of the electorate that the Legislature should meddle in any way with the constitutional procedure to amend the state Constitution. It was fittingly said in the following cases that:
>
> " 'A constitutional provision designed to remove an existing mischief should never be construed as dependent for its efficacy and operation upon legislative will.' "
>
> * * *
>
> "In cases where a provision is self-executing, legislation may still be desirable, by way of providing a more specific and convenient remedy and facilitating the carrying into effect or execution of the rights secured, making every step definite, and safeguarding the same so as to prevent abuses. Such legislation, however, must be in harmony with the spirit of the Constitution, and its object to further the exercise of constitutional right and make it more available, and such law must not curtail the rights reserved, or exceed the limitations specified." *State, ex rel. Caldwell. v. Hooker* (1908), 22 Okla 712, 718 (98 p 964). [*Wolverine Golf Club*, 24 Mich App at 728-30.]

-6-

the Constitution is not met if the rights it grants are unnecessarily impaired under the guise of implementation." [*Id*. at ___; slip op at 12 (emphasis added).³]

The burden created by the 180-day circulation limit is unquestionably an "undue burden." It provides no more protection from the counting of invalid signatures than did the "presumption of staleness" that placed the burden on the circulators to show that signatures over 180 days old are valid. Yet despite adding no additional election security, the absolute limit requires that valid signatures of registered voters be discarded. It is difficult to even articulate any basis for the absolute limit other than a legislative desire to limit the self-retained right of the people to initiate legislation. Indeed, the Board does not even attempt to argue that the 180-day requirement is necessary to ensure the security of the process or its administrative responsibility. And, as noted, *Consumers Power* specifically relied on the fact that the "presumption of staleness" was a rebuttable, rather than an unrebuttable presumption.

The 180-day absolute limit for circulation of initiative petitions is plainly violative of the state Constitution. It is a blatant attempt by the Legislature to interfere with the people's self-retained right to initiate legislation.

For these reasons, I respectfully dissent.

/s/ Douglas B. Shapiro

---

³ The Supreme Court recently held that the League of Women Voters' challenge to newly-adopted petition requirements was moot because the plaintiff had voluntarily abandoned its petition drive. *League of Women Voters*, ___ Mich at ___; slip op at 11-15. That is not the case here given the completed petition drive, the ensuing litigation and plaintiff's declared intent to proceed in 2022.